NELLIE G. MIDDLETON, as Administratrix of the Estate of LEWIS MIDDLETON, Deceased, Appellant, *v.* FREDERICK W. WHITRIDGE, as Receiver of the THIRD AVENUE RAILROAD COMPANY, Respondent.

Appeal — allowance of appeal to Court of Appeals from judgment of reversal in negligence cases not required — Code Civil Procedure, section 1346, as amended by Laws of 1914, ch. 351 — construction and application thereof — practice thereunder in Appellate Division — appeals from judgments entered upon verdicts of juries — negligence — passengers upon street railroads — when railroad company guilty of negligence in failing to care for sick passenger.

1. No allowance of an appeal to this court in a negligence case is necessary under subdivision 2 of section 191 of the Code of Civil Procedure when the appeal is from a judgment of reversal.

2. Section 1346 of the Code of Civil Procedure, as amended to take effect September 1, 1914, provides that an appeal may be taken to the Appellate Division upon the questions of law or upon the facts or upon both from a judgment rendered upon a verdict of a jury precisely as from a judgment rendered upon a trial by a referee or by the court without a jury. As the appeal from the judgment now brings up the facts as well as the exceptions in all cases, a reversal by the Appellate Division, silent as to the grounds thereof, will, perforce of section 1338 of the Code, import in jury cases as well as in cases tried by a referee or the court without a jury that the findings of fact, whether made by the jury, the court or a referee, were approved by the Appellate Division, and such reversal will now be reviewed by this court on that assumption. With this amendment, which abolishes the distinction which was made the basis of the decision in *Wright* v. *Smith* (209 N. Y. 249), it will be incumbent upon the Appellate Division to review the findings of fact in all cases, and, if not satisfied therewith, to so state.

3. An original finding or decision by the Appellate Division pursuant to the practice inaugurated under section 1317 of the Code of Civil Procedure, as amended in 1912, is not a decision that there is evidence to sustain a finding of the trial court or a verdict of a jury. Moreover, the fact that a judgment is entered upon the unanimous decision of the Appellate Division that there is "evidence supporting or tending to sustain a finding of fact or a verdict

# 500    MIDDLETON v. WHITRIDGE.

not directed by the court" does not deprive this court of jurisdiction to review it. The specific question of law is not reviewable and, if no others are presented, the appeal is frivolous; still the judgment is appealable.

4. Where the Appellate Division dismisses the complaint, its action is open to review at least to the extent of determining whether it had the power so to do.

5. If, as a matter of law, a dismissal of the complaint or a direction of a verdict is proper, or if disputed questions of fact are by consent submitted to the court for decision, no constitutional right is invaded by the determination of the cause by the trial court without taking a verdict of the jury, and the final disposition of the cause by the Appellate Division under section 1317 of the Code, as amended in 1912, in the manner in which it should have been disposed of in the first instance, does not violate a right which never existed, or had been waived, to have the cause submitted to a jury.

6. If a passenger becomes sick and unable to care for himself during his journey, the carrier owes him an added duty resulting from the change of situation. The carrier is not bound, unless it has notice of the fact, to observe that its passenger is ill, but if its servants know, or have notice of facts requiring them in the exercise of reasonable prudence to know, that the passenger is sick and in need of attention, it is their duty to give him such reasonable attention as the circumstances and their obligations to other passengers permit, and if they know, or under the rule stated should know, that he is too ill to remain on a car with safety, it is their duty, if practicable, to remove him and put him in the custody of some one who can look after him. So held where a passenger who was ill and died next day from cerebro-hemorrhage, but who was thought by the conductor to be intoxicated, was carried in a street car for several hours, the attention of the conductor having been called to his condition and no steps taken to care for him.

7. It was error to permit the jury to base a finding of negligence on any act or omission of the defendant's servants after the time when attention would have been likely to save the life of the passenger. The evidence tended to show that if the passenger had received proper care within the first hour or two after the hemorrhage occurred, a recovery would have been reasonably certain. *Held*, that it was error to refuse defendant's request to charge, in substance, that if its employees used due care in permitting him to remain in the car during that period of time it was entitled to a verdict. The jury should have been instructed on the point and their attention should have been drawn to the period of time

within which it was permissible for them to find the defendant's servants guilty of any negligence causing the death of the deceased.

8. On examination of the facts, *held*, that there was evidence from which the jury could have found that there was an omission of duty which the defendant owed the deceased which was the proximate cause of his death.

*Middleton* v. *Whitridge*, 156 App. Div. 154, reversed.

(Argued November 24, 1914; decided January 12, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 21, 1913, upon an order reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint in an action to recover for the death of plaintiff's intestate, alleged to have been occasioned through the negligence of the defendant.

The facts, so far as material, are stated in the opinion.

*Frederick N. Van Zandt, Joseph A. Burdeau* and *R. A. Mansfield Hobbs* for appellant. The defendant was negligent. (*Regner* v. *G. F. & S. F. S. R. Co.*, 74 Hun, 202; 6 Thompson on Neg. 452, § 7408; Hutchison on Carriers [3d ed.], § 992; 1 Nellis on St. Rys. 549, § 277; *Sheridan* v. *B. & N. R. R. Co.*, 36 N. Y. 39; *Wells* v. *N. Y. C. & H. R. R. R. Co.*, 25 App. Div. 366; *Dwinelle* v. *N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 117; *Smith* v. *B. & N. A. R. S. S. P. Co.*, 86 N. Y. 408; *Connoly* v. *C. C. R. R. Co.*, 41 La. Ann. 57; *Nelson* v. *C. & N. W. Ry. Co.*, 130 Wis. 214; *A., T. & S. F. R. Co.* v. *Weber*, 33 Kan. 543; *L. S. & M. S. R. R. Co.* v. *Salzman*, 31 L. R. A. 261; *Paddock* v. *A., T. & S. F. R. Co.*, 37 Fed. Rep. 841.) The proximate cause of the death of deceased was the defendant's negligence. (*Turner* v. *Nassau El. R. R. Co.*, 41 App. Div. 215; *McCahill* v. *N. Y. Transp. Co.*, 201 N. Y. 221.) This court has jurisdiction to review the judgment appealed from and reinstate the judgment entered on the verdict because: (1) The appeal is taken from a final judgment and not from an order granting a new trial; and (2) the dismissal by the Appellate Division was

equivalent to a certificate that the reversal was on the law and not on the facts. (Const. of N. Y. art. 6, § 9; Code Civ. Pro. §§ 190, 1318; *Allen* v. *Corn Ex. Bank*, 181 N. Y. 278; *Wright* v. *Smith*, 209 N. Y. 249; *Caldwell* v. *City of New York*, 210 N. Y. 576; *Canavan* v. *Stuyvesant*, 154 N. Y. 84; *Goodwin* v. *Conklin*, 85 N. Y. 219; *Gawthrop* v. *Leary*, 89 N. Y. 622; *I. & G. Trust Co.* v. *Tod*, 180 N. Y. 215; *Volosko* v. *I. S. Ry. Co.*, 190 N. Y. 206; *Jacobson* v. *Brooklyn Lumber Co.*, 184 N. Y. 152; *Kraus* v. *Birnbaum*, 200 N. Y. 130.)

*J. Ralph Hilton* and *James L. Quackenbush* for respondent. The appeal from the judgment and order of the Appellate Division should be dismissed. (*Sciolina* v. *Erie Preserving Co.*, 151 N. Y. 50; *Wright* v. *Hunter*, 46 N. Y. 409; *Harris* v. *Burdett*, 73 N. Y. 136; *Williams* v. *D., L. & W. R. R. Co.*, 127 N. Y. 643; *Chapman* v. *Comstock*, 134 N. Y. 509; *Mickie* v. *W. M. & R. M. Co.*, 144 N. Y. 613; *Albring* v. *N. Y. C. & H. R. R. R. Co.*, 166 N. Y. 287; *Bank of China* v. *Morse*, 168 N. Y. 458; *Allen* v. *Corn Exchange Bank*, 181 N. Y. 278; *Peterson* v. *O. E. Ry. Co.*, 161 App. Div. 720.) The complaint should have been dismissed because the defendant's employees were not negligent in failing to remove the passenger from the car when he manifested symptoms resembling intoxication. (*Le Mont* v. *W. & G. R. R. Co.*, 1 Mackey [D. C.], 180; *Murphy* v. *U. P. R. R. Co.*, 118 Mass. 228; *Black* v. *N. Y., N. H. & H. R. R. Co.*, 79 N. E. Rep. 797; *Adams* v. *St. L., etc., R. R. Co.*, 137 S. W. Rep. 437; *Bageard* v. *Cons. Traction Co.*, 64 N. J. L. 316; *Regner* v. *Glens Falls, etc., R. R. Co.*, 74 Hun, 202; *Connolly* v. *Crescent City R. R. Co.*, 41 La. 57; *Nelson* v. *C. N. Ry. Co.*, 130 Wis. 214; *Atchison, T. & S. F. R. Co.* v. *Weber*, 33 Kan. 543; *Paddock* v. *Atch., T. & S. F. R. Co.*, 37 Fed. Rep. 841; *Railway Co.* v. *Parry*, 67 Kan. 516; *St. L., I. M. & S. R. Co.* v. *Woodruff*, 115

S. W. Rep. 953; *Eidson* v. *South. R. R. Co.*, 23 So. Rep. 369; *Gill* v. *Rochester R. R. Co.*, 37 Hun, 107.) There was no evidence from which the jury could properly have found that the ride on the car was the proximate cause of death. (*Laidlaw* v. *Sage*, 158 N. Y. 73; *Jewell* v. *Parr*, 13 C. B. 916; *Imp. Co.* v. *Munson*, 14 Wall. 442; *Pollock* v. *Black*, 71 N. Y. 137; *Bond* v. *Smith*, 113 N. Y. 378; *Grotsch* v. *Steinway R. R. Co.*, 19 App. Div. 131; *Koehler* v. *N. Y, Steam Co.*, 71 App. Div. 226; *Sullivan* v. *Metropolitan Co.*, 63 App. Div. 48; *McGinness* v. *Third Avenue R. R. Co.*, 104 App. Div. 345; *Dougherty* v. *Milliken*, 163 N. Y. 527.) The court erred in permitting the jury to consider as a basis for a finding of defendant's negligence the conduct of the employees in control of the car after the termination of the first south-bound trip. (*Schoen* v. *Dry Dock, etc., R. R. Co.*, 26 J. & S. 149; *Seifter* v. *B. H. R. R. Co.*, 169 N. Y. 254; *Maimone* v. *Dry Dock, etc., R. R. Co.*, 58 App. Div. 383; *Laidlaw* v. *Sage*, 158 N. Y. 73.)

MILLER, J. The respondent asks for a dismissal of the appeal, and, if I understand the grounds of the request, they are that under the authority of *Wright* v. *Smith* (209 N. Y. 249) this court cannot entertain jurisdiction, that the appeal does not lie as of right, and that the unanimous decision of the Appellate Division upon which the final judgment was entered pursuant to section 1317 of the Code of Civil Procedure is not reviewable.

The appeal is from a final judgment dismissing the complaint, so *Wright* v. *Smith* (*supra*) has no application. Whilst the point is not directly involved, we consider it our duty in this connection to call the attention of the bench and bar to an important change in the practice effected by the amendment to section 1346 of the Code of Civil Procedure which took effect September 1st, 1914. In our opinion that amendment was sufficient to change the rule of that case and completely to assimilate the

practice on appeal in jury cases to that in actions tried by a referee, or the court without a jury. That was the obvious purpose of the amendment to section 1338 of the Code of Civil Procedure considered by us in that case. However, we were compelled to hold that the legislature had not succeeded in accomplishing its purpose by reason of the fact that said section 1338 as amended in 1912 applied only to appeals from judgments *reversing judgments* or from orders granting new trials on *such reversals*, and under section 1346, as it then was, the appeal from a judgment rendered on the verdict of a jury brought up the exceptions only, the facts being still reviewable only on an appeal from an order denying a motion for a new trial. In that state of the practice it would still remain true, notwithstanding the amendment to section 1338, that the Appellate Division might reverse the judgment without considering the questions raised on the appeal from the order, and such a reversal would import nothing as to the disposition of those questions. Upon that distinction in the practice this court has uniformly since the decision of *Wright* v. *Hunter* (46 N. Y. 409) based its refusal in jury cases to entertain jurisdiction of appeals from judgments or orders of the General Term or Appellate Division granting new trials when there was an appeal to that court both from the judgment and an order denying a motion for a new trial unless it affirmatively appeared that the order was affirmed or the appeal therefrom dismissed. That distinction was expressly made the basis of the decision in *Wright* v. *Smith* (*supra*). Presumably on account of that decision the legislature has abolished that distinction by amending section 1346 so as to provide that an appeal may be taken upon questions of law or upon the facts or upon both from a judgment rendered on the verdict of a jury precisely as from a judgment rendered upon a trial by a referee or by the court without a jury. As the appeal from the judgment now brings up the facts as well as

the exceptions in all cases, a reversal by the Appellate Division, silent as to the grounds thereof, will, perforce of section 1338, import in jury cases as well as in cases tried by a referee or the court without a jury that the findings of fact, whether made by the jury, the court or a referee, were approved by the Appellate Division, and such reversal will now be reviewed by us on that assumption. (*Untermyer* v. *City of Yonkers,* 188 N. Y. 594; *Lenox* v. *Lenox,* 195 N. Y. 359.) It will thus be incumbent on the Appellate Divisions to review the findings of fact in all cases, and, if not satisfied therewith, to say so. Of course, the amendment to said section 1346 will not apply to judgments of the Appellate Division rendered, as this one was, prior to September 1st, 1914.

The appeal is from a judgment of reversal, not from a judgment of affirmance, so an allowance of it pursuant to section 191, subdivision 2, of the Code of Civil Procedure was not necessary.

The decision of the Appellate Division, though unanimous, was that there was no evidence to sustain the verdict, not that there was "evidence supporting or tending to sustain a finding of fact or a verdict not directed by the court" within the meaning of section 191, subdivision 4, of the Code of Civil Procedure, or article 6, section 9, of the State Constitution. That language seems plain. It imports a finding of fact by the trial court or a referee or a verdict of a jury not directed by the court, and a unanimous decision of the Appellate Division on appeal that there is "evidence supporting or tending to sustain" such finding of fact or verdict as the case may be. An original finding or decision by the Appellate Division pursuant to the practice inaugurated under section 1317 of the Code of Civil Procedure, as amended in 1912, is not a decision that there is evidence to sustain a finding of the trial court or a verdict of a jury. Moreover, the fact that a judgment is entered upon the unanimous decision of the Appellate Division that there is "evi-

dence supporting or tending to sustain a finding of fact or a verdict not directed by the court" does not, as seems too commonly to be supposed, deprive this court of jurisdiction to review it. The specific question of law is not reviewable and, if no others are presented, the appeal is frivolous, still the judgment is appealable.

If the Appellate Division had granted a new trial, its judgment would not be reviewable unless it affirmatively appeared, as it does not, that the findings of the jury had been affirmed (*Wright* v. *Smith, supra*); but it has granted a final judgment dismissing the complaint and its action is open to review by us at least to the extent of determining whether on reversing the judgment of the trial court it had the power to dismiss the complaint. That the Appellate Division has the power under section 1317 of the Code of Civil Procedure to make new findings of fact and a final adjudication on the merits in a case triable by the court has been definitely decided by this court. (*Bonnette* v. *Molloy*, 209 N. Y. 167; *Lamport* v. *Smedley*, 213 N. Y. 82.) The extent of the power in cases triable of right by a jury is limited by article 1, section 2, of the State Constitution which provides: " The trial by jury in all cases in which it has been heretofore used shall remain inviolate forever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law." It is too plain to admit of doubt or to require discussion that in such cases the ultimate decision of all disputed questions of fact must be by a jury unless the parties have consented to a decision of them by the court, but it does not follow that the Appellate Division may never finally dispose of a jury case in which it disagrees with the trial court. The Seventh Amendment to the Federal Constitution does not limit state action, and so *Slocum* v. *New York Life Insurance Co.* (228 U. S. 364) is not controlling. Moreover, the said provisions of the State and Federal Constitutions are dissimilar. The provision of the State Constitution guar-

antees the substantial right of trial by jury, but it contains no language even suggestive of a purpose to preserve ancient common-law forms and rules of procedure. If as a matter of law a dismissal of the complaint or a direction of a verdict is proper, or if disputed questions of fact are by consent submitted to the court for decision, as where both sides move for a direction of a verdict without asking to go to the jury, no constitutional right is invaded by the determination of the cause by the trial court without taking a verdict of the jury. If in such case the trial court errs by submitting the case to the jury, or in deciding a question of fact submitted to it for decision, the purpose of the appeal is to correct such error, and the final disposition of the cause by the Appellate Division, in the manner in which it should have been disposed of in the first instance, does not violate a right which never existed or had been waived, to have the case submitted to the jury. (See *Bothwell* v. *Boston El. Ry. Co.*, 215 Mass. 467.) The framers of the amendment to said section 1317 were plainly mindful of the constitutional limitation upon their power. " When a trial has been before a jury," the section reads, " the judgment of the appellate court must be rendered either upon special findings of the jury or the general verdict, or upon a motion to dismiss the complaint or to direct a verdict." The final judgment then which the Appellate Division is empowered to render is the one which the trial court should have rendered either upon a special or a general verdict, or upon a motion to dismiss the complaint or to direct a verdict. The error thus corrected is the error of the court, not of the jury. The province of the jury is not invaded by the correction of such an error and the rendition of the judgment which ought to have been rendered by the trial court. The question on the merits then in this case is whether the evidence presented a question of fact for the jury. If it did not, the Appellate Division had the power

on the motion to dismiss the complaint to render the judgment appealed from. If it did, the Appellate Division on reversing the judgment should have granted a new trial.

The plaintiff's intestate died from a cerebral hemorrhage occurring while he was riding as a passenger on one of the defendant's surface street cars. The question is whether there was any evidence from which a jury could have found that the proximate cause of death was the violation of some duty which the defendant owed him. The facts are admitted by the answer or established by uncontradicted evidence, though it is possible to draw conflicting inferences from them. At about 2:40 or 2:45 P. M. on May 24th, 1910, the deceased boarded a north-bound open "pay-as-you-enter" car at One Hundred and Fortieth street in the borough of Manhattan. When last seen shortly before that he was apparently in good health. There was nothing in his appearance or manner to attract notice when he entered the car, and the conductor did not notice any one board the car who appeared to be sick or intoxicated. The answer admits that the attention of the conductor was called to the fact that there was something wrong with the deceased at or near One Hundred and Eighty-second street and Amsterdam avenue, and that upon entering the car the conductor found vomit upon his clothing, and permitted him to remain in the car in that condition until the end of the run was reached. The conductor testified that he observed the deceased change from the right to the left-hand side of the car at One Hundred and Eighty-fifth street and Amsterdam avenue, but did not notice vomit on his clothing and paid no further attention to him until the car reached the end of its run at Fort George, One Hundred and Ninety-fifth street; that there he "tried to rouse" the deceased, "tapped him on his shoulder and told him it was the end of the road, and we were going back down

town. He said 'All right, all right,' and he was start-
ing to vomit;" that the deceased did not attempt to get
up, but sat "right there in his seat;" that before starting
back he (the conductor) told the starter that he had a
"drunk" whom he "couldn't get off;" that the starter,
without entering the car or investigating the condition
of the deceased, said "to let him sleep it off and carry
him down; that he would be all right at the end of the
trip." No further attention was paid to the deceased,
but he was taken from Fort George to the post office. The
conductor says that on the way down town he observed
the deceased adjusting his spectacles and vomiting from
time to time; to quote his language, "It might have
gone ten or twenty blocks once in a while and might have
gone five. He seemed to be sick at his stomach." The
conductor called no one's attention to the deceased at
the post office, although there were starters and inspect-
ors at that point, but started the car back up town.
Before doing so he entered the car and asked the deceased
for his fare. He says that he went in to "rouse the man
up and tell him it was best to take a walk." It does not
appear that the deceased made any audible response or
any movement except to fumble in his pockets. A pas-
senger, just boarding the car, paid the fare, saying: "I
have been often in the same boat myself. I have often
had a jag on myself. Here is the fare. Let him go and
he will be all right." The conductor took the fare and
paid no more attention to the deceased. When the car
reached Sixty-fifth street at 5:35 P. M. it was turned over
to another crew, and with the deceased still on it was
taken back to Fort George and again back to One Hun-
dred and Twenty-fifth street, when the attention of an
inspector being called to the situation, the car was ordered
back to the car barn at One Hundred and Twenty-ninth
street, a police officer was called, and at 7:45 P. M. the
deceased was removed and taken to the police station.
He was then in a state of complete coma. By the

direction of the lieutenant he was taken to the Harlem Hospital, where his trouble was diagnosed as cerebral hemorrhage. The next day he was removed to another hospital, where he died at 11:45 P. M. without having regained consciousness. The attention of the conductor of the second crew was called to the deceased by a passenger at Ninety-second street, and on entering the car the conductor observed vomit on his clothes and on the floor. At One Hundred and Seventy-fifth street a passenger picked up his pocketbook, which had fallen to the floor, and he was still able to put it in his pocket. The motorman of the second crew observed him, precisely when seems to be in doubt, lying back in his seat apparently helpless, his clothes covered with vomit, and water running down the side of his pants as though he had urinated. The answer admits that when the second conductor took charge of the car, and thereafter and until the end of the run at Fort George, he noticed the deceased "lying on one of the car seats and occupying the whole seat with his arms stretched out, his hat off, and vomit upon his clothing." There is medical evidence to the effect that the first hemorrhage was slight, and that if the deceased had received proper care within one to two hours after it first occurred a recovery would have been reasonably certain, but that carrying the deceased in the car under the conditions disclosed tended to increase the hemorrhage and ultimately produce coma and death.

It will be useful to determine at this point precisely what duty the defendant owed the deceased. If a passenger becomes sick and unable to care for himself during his journey, it seems plain that the carrier owes him an added duty resulting from the change of situation. That duty springs from the contract to carry safely. Of course, the carrier is not bound, unless it has notice of the fact, to observe that its passenger is ill, but if the defendant's servants knew, or had notice of facts

requiring them in the exercise of reasonable prudence to know, that the deceased was sick and in need of attention, it was their duty to give him such reasonable attention as the circumstances and their obligations to other passengers permitted, and if they knew, or under the rule stated should have known, that he was too ill to remain on the car with safety, it was their duty, if practicable, to remove him and put him in the custody of an officer or some one who could look after him. Whilst no case precisely like this has been found, the general obligation of the carrier in such cases has many times been recognized. (See *Sheridan* v. *Brooklyn City & Newtown R. R. Co.*, 36 N. Y. 39; *Wells* v. *New York Central & Hudson River R. R. Co.*, 25 App. Div. 365; *Newark & South Orange R. R. Co.* v. *McCann*, 58 N. J. Law, 642; *Railway Company* v. *Salzman*, 52 Ohio State, 558; *Conolly* v. *C. C. Railroad Co.*, 41 La. Ann. 57; Hutchinson on Carriers [3d edition], section 992.)

It was of course practicable to stop the car at almost any point of its route and without undue delay to put the deceased in the custody of a police officer. The conductor knew that his passenger had boarded the car without exhibiting, so far as he observed, the slightest evidence of sickness or intoxication, that thereafter he had become suddenly ill, and that at Fort George, after having been carried by his destination, his illness had so progressed as to make him apparently unconscious of his situation and practically helpless. Of course, I am drawing the most favorable inferences to the plaintiff which the evidence and the admitted facts justify.

Was the conductor's heedlessness of his passenger's condition excused by the fact that he assumed, honestly but without any investigation, that the passenger was drunk? If a rash assumption on the part of the conductor will excuse the discharge of the duty which the carrier owes to a passenger taken suddenly ill, then it might as well be said that no duty exists to render any

assistance in such case. The case turns not on what the conductor assumed or thought, but on what he should in the exercise of reasonable prudence have done in the light of the facts which were brought to his notice. Of course, the defendant is not to be charged with neglect of duty because of the conductor's failure to discover that his passenger had a stroke of apoplexy. The fault of the conductor was not in making a wrong diagnosis, but in rashly assuming that he was competent to make any diagnosis at all. The passenger's nausea might have resulted from a variety of causes other than intoxication, and his apparent helplessness by the time the car reached Fort George indicated a critical condition requiring immediate attention. It may be assumed that at the moment of first noticing his passenger's nausea the conductor might reasonably have assumed that it was due to intoxication, although that assumption was opposed by the fact that the passenger had exhibited no evidence of intoxication upon boarding the car. The question is whether his continued heedlessness was justified by that assumption in view of what followed and had preceded. If a conductor is to be permitted to diagnose the condition of a passenger apparently taken suddenly ill and rendered helpless, he should at least in making the diagnosis exercise the judgment of a reasonably prudent conductor under the circumstances. There is no pretense that there was the slightest odor of liquor about the deceased, and it affirmatively appears that he had not been drinking. If he had drunk enough liquor to cause him to be in the condition described, it would seem that the odor of it could have been detected upon the most casual investigation. A jury could have found that the condition of the deceased grew worse, and from the description given by the conductor of what occurred at the post office that he was then utterly helpless. That condition, after he had ridden in an open car for two hours, vomiting every few blocks, was so extraordinary, if due to intoxication, as to

justify a jury in finding that it would have occurred to a conducter, not utterly heedless, that the passenger was seriously ill, especially in view of the fact that he was apparently sober when he boarded the car.

It is of little consequence what other passengers thought, who owed the deceased no duty and only casually observed his condition. What occurred after the car started back up town from the post office is mainly important as bearing on his apparent condition before that and on the proximate cause of his death, because it is speculative at the best whether any attention rendered after that time could have saved his life. My conclusion is that a jury could have found from the evidence that at some point before the car reached the post office on its trip down town it would have occurred to a reasonably prudent person in the position of the conductor that the deceased was in a critical condition and in need of immediate medical attention, and that it was imprudent to the point of rashness longer to indulge in the assumption, first made without any investigation whatever, that the passenger was drunk.

It remains to consider whether there was evidence from which the jury could have found that the omission of duty which the defendant owed the deceased was the proximate cause of his death. It is, of course, possible that the first hemorrhage might have produced death even with the best of care. It is rarely possible to establish with absolute certainty the fact to be proven in such cases. Reasonable certainty, however, is all that is required. The medical evidence, and all the surrounding circumstances, tend to show that the first hemorrhage was slight and not fatal, and that the result of carrying the deceased for five hours in an upright position in a street car with the attendant jolting increased the hemorrhage and thus produced complete coma and ultimately death. Medical experts gave their opinion that, if the deceased had had proper care within from

33

one to two hours after the first attack, it was reasonably certain that his life could have been saved. Whether the hypothetical questions included all of the facts which should have been put before the witnesses is not the question now under consideration. The evidence was received and, though perhaps weakened on cross-examination, its force and effect were for the jury. Had the objections been sustained any omissions might have been supplied. The question of the sufficiency of the evidence to present a question of fact must be determined on appeal by the evidence actually received, and we are of the opinion that that evidence presented a question for the jury, both as to the defendant's negligence and as to whether that negligence was the proximate cause of the death. The Appellate Division, therefore, erred in dismissing the complaint.

The question next arises how to dispose of this appeal. Logically the reversal of the judgment of the Appellate Division restores the judgment reversed by it. On that theory this court has uniformly declined to entertain appeals where the Appellate Division had granted new trials without approving of the findings of fact made by the jury. The appellant asks that the judgment of the trial court be restored. That course would deprive the defendant of the right to have the Appellate Division weigh the evidence. I have stated the inferences which a jury would have the right to draw from the evidence, but the Appellate Division, having the final review of the facts, might hold that the weight of the evidence required other inferences or that the verdict was excessive and for either reason require the submission of the case to another jury. Only two other courses seem to be open, either, 1, to grant a new trial, or 2, to remit the case to the Appellate Division to consider it on the facts. The granting of a new trial would logically import a reversal by us of the judgment of the trial court. It so happens that the record discloses exceptions, which require a new trial. So it is

1915.]            Opinion, per MILLER, J.            [213 N. Y.]

unnecessary to determine what course would be adopted, if there were no such exceptions. By reason of the amendment to section 1346 hereinbefore considered that question cannot arise with respect to judgments of the Appellate Division rendered after September 1st, 1914.

The hypothetical questions addressed to the medical experts assumed that the deceased was in good condition, or apparently in good condition, on boarding the car, and contained no reference whatever to conditions shown by the plaintiff's witnesses to have existed, especially to the hardened condition of his arteries and the condition of his kidneys indicated by the presence of albumen and granulated casts in his urine. The omission was persisted in though attention was called to it by the court. It may be that the error was cured, at least as to some of the witnesses, by their testimony on cross-examination that their answers made to the hypothetical questions would not be changed if the facts with reference to such conditions had been included in the hypothetical question. We refer to the matter to the end that upon a new trial the error may not be repeated. The court charged the jury on the question of defendant's negligence that they might take into consideration the evidence "that conductor Twomey [the conductor of the second crew] did not inform Sheehan, the police officer, to whom Mr. Middleton was turned over, as to the length of time he had been in the condition described by Twomey, or as to his condition at all, together with all the other evidence in the case." The court refused to charge, as requested, that "if the defendant's employees acted with reasonable care in permitting Mr. Middleton to ride upon the car on its first trip down town, then the defendant is entitled to a verdict." An exception was taken to that refusal and also to the charge which allowed the jury to consider the acts of Conductor Twomey in determining the negligence of the defendant. Those exceptions present reversible error. While the

evidence as to what occurred after the car left the post office was admissible for the purposes hereinbefore stated, it was error to permit the jury to base a finding of negligence on any act or omission of the defendant's servants after that time, because as already shown there was not sufficient evidence to justify a finding that such negligent act or omission, if it occurred, was the proximate cause of death. It was a serious question of fact whether any attention or care after the first hemorrhage would have saved the life of the deceased. The jury should have carefully been instructed on the point and their attention should have sharply been drawn to the period of time within which it was permissible for them to find the defendant's servants guilty of any negligence causing the death of the deceased.

The judgments should be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., WERNER, CHASE, COLLIN and CUDDEBACK, JJ., concur; HISCOCK, J., dissents from the reversal of the judgment of the Appellate Division, but concurs in the opinion of MILLER, J., so far as it deals with the questions of practice.

Judgments reversed, etc.