DAVID PLUTNER, Plaintiff, *v.* SILVER ASSOCIATES, INC., Defendant.

Municipal Court of the City of New York, Borough of Manhattan, April 24, 1946.

*Sol Koenigsberg* for plaintiff.

*Julian I. Bergoffen* for defendant.

Di Pirro, J. This action is predicated in negligence based upon the alleged failure of defendant to furnish " medical aid and assistance " to the plaintiff after plaintiff had sustained a fall and received various injuries while a patron in the defendant's establishment.

The action is a novel one and there is a dearth of authority on this particular subject.

The facts, briefly stated, are that on September 22, 1945, the plaintiff paid to the defendant the charge required of him in order to be admitted to the bathhouse which was owned and operated by the defendant and located in Coney Island, New York. This bathhouse afforded to its patrons the use of its steam rooms, hot rooms, swimming pool and hot salt-water baths.

While availing himself of the defendant's facilities the plaintiff fell while descending a stone stairway. As a result of this fall, plaintiff struck the back of his head against the stone steps. An attendant assisted the plaintiff to a nearby seat and then returned to his interrupted work of attending to the wants of another patron. While this attendant was proceeding with his duties the plaintiff advised him that he was " ill and dizzy " and thought he was " going to die " and requested the attendant to assist and help him upstairs so that he could secure medical attention. The attendant advised the plaintiff to wait until he had completed his duties with the patron that he was assisting. With this the plaintiff again stated that he " felt very badly and needed immediate attention " and when the attendant again requested the plaintiff to wait a few moments, the plaintiff started to ascend the stairway alone. While in the act of ascending the stairway plaintiff collapsed on the steps and became unconscious.

Plaintiff contends that the failure of defendant to furnish aid and assistance after he had been injured was the proximate and resulting cause of the injuries subsequently sustained when the plaintiff voluntarily sought to secure medical assistance.

The defendant moved to dismiss the plaintiff's complaint at the close of the plaintiff's case, upon which motion decision was reserved. Thereupon the defendant rested and again renewed the motion.

The sole question involved in this matter is: Did the failure and refusal on the part of the defendant to render aid and assistance to an injured patron who requested help after being injured bring about liability on the part of the defendant when the patron himself attempts to secure medical assistance and aid?

Concededly, there is no legal duty to offer relief or assistance to one who is sick or injured. It is true that there may be a strong moral and humanitarian obligation to furnish such aid and assistance under ordinary circumstances but from time immemorial our courts have held that there is no legal responsibility so to do.

The plaintiff, however, attempts to spell out liability in this case under the theory that the relationship of the parties or the very nature of the surroundings emphasizes a moral obligation as a result of which a legal responsibility comes about and renders the defendant liable for damages for the failure to furnish such aid and succor. The cases cited in support of this contention are " public carrier " cases. (See *Middleton* v. *Whitridge,* 213 N. Y. 499; *Central Railway Co.* v. *Madden,* 135 Ga. 205; *Casteel* v. *American Airways, Inc.,* 261 Ky. 818; *Searcy* v. *Interurban Transp. Co.,* 189 La. 183; *Hughes* v. *Gregory Bus Lines, Inc.,* 157 Miss. 374; *Stewart* v. *Houston & T. C. Ry. Co.,* 229 S. W. 577 [Tex.].)

In the *Middleton* case (*supra*) Judge Miller held at page 510–511: " If a passenger becomes sick and unable to care for himself during his journey, it seems plain that the carrier owes him an added duty resulting from the change of situation. That duty springs from the contract to carry safely. Of course, the carrier is not bound, unless it has notice of the fact, to observe that its passenger is ill, but if the defendant's servants knew, or had notice of facts requiring them in the exercise of reasonable prudence to know, that the deceased was sick and in need of attention, it was their duty to give him such reasonable attention as the circumstances and their obligations to other passengers permitted, and if they knew, or under the rule stated

should have known, that he was too ill to remain on the car with safety, it was their duty, if practicable, to remove him and put him in the custody of an officer or some one who could look after him.''

It is to be noted that this case requires a public carrier to exercise '' an added duty resulting from the change of situation '' to a traveler who becomes ill and in need of attention. In this case the only similarity between the bathhouse and a public carrier is that both operate a business which is held out to the general public but the duties and responsibilities vary insofar as the legal obligations of each of these different enterprises are concerned. (*Zelenko* v. *Gimbel Bros., Inc.*, 158 Misc. 904.)

A case somewhat closer in point to the matters in issue herein is *Warren* v. *Werther* (182 App. Div. 783, 785, affd. 228 N. Y. 537). In that case liability was sought to be fastened upon the defendant by the plaintiff who was a patron in a Turkish bath by reason of the negligence on the part of the defendant on the grounds that the floor of the hot room was not sufficiently covered and that the plaintiff was entitled to reasonable protection and reasonably sufficient attention from the defendant, '' such as a person of ordinary prudence engaged in such a business would supply for a patron.''

The court, speaking through Dowling, J., held: '' There is no testimony in this record which would justify a recovery upon either theory. Plaintiff was an experienced bather. He asked for no instructions as to what he should do when he entered the defendant's baths and gave no exterior indication of illness, nor of a physical condition which might render his use of the baths dangerous. He himself did not imagine that he was taking any risk in following out his usual course of making use of the facilities of the bath nor did he believe that his physical condition was such as to render its use dangerous.''

In addition, the plaintiff in that case claimed upon appeal that the defendant was liable for its failure to supply plaintiff any medical attention after the accident. This point had not been previously raised before the trial court. The court in disposing of this contention held (p. 787): '' But there is no proof in the case that the injuries were in any way aggravated by the tardiness of the medical attendance nor in fact does the record justify even an inference that the plaintiff was not furnished with medical attendance as soon after he was removed from the hot room as was possible ''.

The plaintiff in his efforts to impose liability on the defendant herein seizes upon the quoted portion of Justice Dowling's

opinion in an effort to spell out liability and damages to the plaintiff herein. It is to be noted that this question was not directly passed upon. However, in the instant case no proof was offered on the part of the plaintiff to bring home to the defendant that it could foreseeably expect that patrons using facilities of defendant could be injured and would require medical aid or assistance. The testimony of the plaintiff demonstrated that he was requested to wait. This is not a refusal. His unwillingness to wait as a result of which he attempted to seek aid certainly is not attributable to the defendant's action in any wise. This is not a case of " continued heedlessness " as held by the Court of Appeals in the *Middleton* case (213 N. Y. 499, *supra*).

If the plaintiff's contention be correct then it would follow that theatres, beauty parlors and other places that are held open to the public would be required to have at hand medical aid and assistance. Such is not within the contemplation of the cost of admission by an enterprise held out to the general public.

I am therefore constrained to find from the facts as adduced upon the trial herein that judgment must be rendered in favor of the defendant dismissing the plaintiff's complaint upon the merits.