Deyo, J.
Claimant was one of a four-man team participating in a bobsled race conducted under the auspices and supervision of the Adirondack Bobsled Club on the bobsled run owned and maintained by the State of New York at Mount Van Hoevenberg, near Lake Placid. The State reserved complete control over the run and the lands on which it was located, charging an admission fee to spectators and barring private vehicles therefrom. Claimant and his companions were hurtled against the wooded mountainside when the sled upon which they were riding failed to negotiate a curve. Claimant suffered several fractures of his left leg, a collapsed lung, bruises, contusions and profound shock. Following the accident State employees assumed charge of the helpless claimant and his teammates, provided stretchers and blankets, and transported them down the mountainside to the finish line in a State owned dump truck, and thence in a State owned pick-up truck with canvas top, to the Lake Placid Hospital eight miles away. Normal circulation was not restored to claimant’s left leg and gangrene set in necessitating amputation above the knee.
Claimant makes no claim for the original accident or injuries and does not attribute the same to any fault of the State with respect to the condition of the run or the sled. His claim is based on the alleged negligence of the State in failing to provide prompt and proper medical and hospital care or a proper conveyance to a place where such care might be obtained, by reason of which claimant contends that he suffered exposure to cold due to an unreasonable delay in removing him from the scene of the accident and in transporting him to the hospital in unheated open vehicles, all of which aggravated his condition of shock, caused a failure in the circulatory system of his left leg, brought on the ensuing gangrene and resulted in amputation.
So far as the record discloses, there had been no previous conduct which might have led claimant to believe that the State would furnish any medical care whatsoever. In fact, the evi *12 dence is all to the contrary. In the past the club or association which conducted the races furnished facilities of this nature, presumably out of the entrance fees which it collected from the contestants. The State has never undertaken any such duty, and the claimant was aware that it had not done so on the day in question.
Nevertheless, the State was under a duty to exercise ordinary, reasonable care commensurate with the circumstances. In view of the fact that the State was largely responsible for enticing both spectators and contestants to this somewhat remote spot, and that it exercised almost exclusive control over the run and its surroundings, I think it fair to state that it owed something-more to this claimant than the duty assumed by a volunteer who, in no way responsible for an original accident, assumes the care of an injured person. Under all of the circumstances, the State, having been put on notice of the hazardous and dangerous propensities of the bobsled run, as indicated by the long list of prior accidents, could not remain aloof and leave the task of succor to such good Samaritan as happened by. The proof is clear that it could be readily foreseen that persons using these facilities of the State, as the claimant was, might be injured and would require medical aid and assistance. The duty, therefore, devolved upon the State to furnish reasonable facilities for the care of the injured. What those facilities should be must be determined by reason and common sense. I do not think the State was called upon to furnish an ambulance. If it was, then the type of ambulance and the way in which it was equipped would become an issue. Nor do I think it was called upon to provide a doctor or a nurse. If it was, then the question would be whether they had the proper skill and experience. Actually, this question is not in the case, since it so happened that there was a doctor present from almost the moment the accident occurred, and there is- not the slightest suggestion that one furnished by the State could have done any more than did he. I am of the opinion that the State discharged its full duty to this claimant and did all that it could reasonably be expected to do for him when it provided stretchers, blankets and transportation to the nearest hospital. Reason and common sense demand that it do no more.
Even if the State had been under no original obligation to the claimant, having taken him in charge following the accident and having assumed the duty of caring for him, it was thereafter accountable for the manner in which it performed this duty, and was called upon to exercise reasonable and ordinary care in per *13 forming the task assumed. Unreasonable delay in transporting claimant to a place where medical attention could be rendered, might well constitute a violation of this duty. (Middleton v. Whitridge, 213 N. Y. 499.) Here, however, we find no such breach. The State promptly produced blankets and stretchers, and removed claimant and his teammate to the nearest hospital by means of the only transportation then available. The record is entirely devoid of any proof that whatever delay there might have been was unnecessary or was caused by the employees of the State.
I cannot agree with the trial court that the claimant is barred from recovery because of an assumption of risk. It may well be that known dangers of exposure to cold and the possibilities of delay in hospitalization were inherent in the risk assumed. However, such assumption would not cover delay and exposure due to negligence on the part of the State, had such been established.
Nor am I in accord with the trial court’s conclusion that there was a failure of proof that delay and exposure caused the complications from which claimant suffered. There is a wealth of medical testimony in this regard, all of which is to the effect that exposure caused, or at least aggravated the condition. This medical testimony was disregarded for the reason that in the hypothetical question put to the doctors, they were asked to assume that a lower temperature prevailed on the day in question and that more time elapsed before claimant was hospitalized than the court subsequently found as facts. Under the circumstances the trial court was not justified in refusing to consider the testimony on these grounds. In the first place, the differences were not substantial. Moreover, the temperature and elapsed time which the doctors were asked to assume were approximations only and were recognized as such by all concerned. At best, these differences would affect only the degree of exposure to which claimant had been subjected. Finally, it must be borne in mind that at least one of the doctors was the attending physician. He, could and did testify from personal observations and from his own diagnosis without resort to any hypothetical question, that cold had destroyed áll circulation in claimant’s foot, and that this resulted in the subsequent gangrene. I feel this medical testimony was entitled to consideration. Of course, it does not necessarily follow that the State was responsible for such delay and exposure.
*14 The judgments should be affirmed on the ground that claimant has failed to prove any negligence on the part of the State of New York.