Charles T. Major, J.
This claim was duly filed on November 19, 1957, to recover damages sustained by the claimant as the result of the alleged wrongful death of claimant’s intestate by reason of the alleged negligence of the State of New York, its officers, agents and employees. This claim has not been assigned *168 or submitted to any other court or tribunal for audit or determination. Limited letters of administration of the goods, chattels and credits of Gladys Veronica Rockwell, deceased, were duly issued to the claimant by the Surrogate’s Court of Nassau County on August 30, 1957; and, at the time of the filing the claim herein, were and still are in full force and effect.
On June 18, 1957, claimant accompanied by his wife Gladys and son William in one car, and his daughter Marion and her husband Roland Ulip in an other car, drove to Jones Beach State Park from claimant’s home in Freeport, New York. They were dressed in bathing suits, and it was their intention to have a swim and thereafter a cook-out, using the facilities provided near Parking Field No. 1. After paying the toll required of persons entering Jones Beach State Park, they parked their cars, unloaded the food, blankets and equipment they had brought with them. After finding a suitable place on the beach to leave the same, they proceeded to enter the water at about 5:20 p.m. The son William and his brother-in-law Roland Ulip walked ahead and were first to enter the water. They were followed by claimant, his wife and daughter Marion. The surf adjoining the beach was calm. The sun was shining; and, although hot, the general weather conditions at that time were ideal for an outing of this kind.
Claimant’s intestate, her daughter and claimant entered the water together, and after the water was a little above claimant’s knees, he dove into the water and swam a few strokes. Mrs. Rockwell and her daughter waded out about 20 yards from shore to where the water was only about two and one-half feet to three feet deep. At this point, according to the daughter’s testimony, the sandbar on which she and her mother were walking gave way, and suddenly they found themselves in deep water and could not touch bottom. Mrs. Rockwell became submerged and started to -struggle. The daughter called for help. The claimant arrived at his wife’s side first, and stated that he tried to hold his wife up. The son and son-in-law heard the call for help, swam over and took Mrs. Rockwell to shore first, and then went back for Mr. Rockwell.
The son-in-law, who had some training and experience in artificial respiration, laid Mrs. Rockwell on her stomach on the wet beach, turned her head on the side, and began giving her artificial respiration. He testified that he did this for 5 or 10 minutes, and liquid like water came out of her mouth at the end of this period; that Mrs. Rockwell was choking and said “ I can’t breathe ”. He continued administering artificial respiration until a lifeguard came, helped him move her on dry sand, *169 and told TJlip that additional artificial respiration was not necessary. An oxygen tank with equipment was brought to the scene, and the lifeguard began giving oxygen to Mrs. Rockwell. At about 5:45 p.m., a stretcher was brought and Mrs. Rockwell was carried to the first-aid station, placed on a couch and covered with blankets. A heating pad'was applied, and the nurse in charge starting giving oxygen. Mrs. Rockwell was having respiratory difficulties and could not breathe lying down. She threw the blankets off and sat up on the side of the bed with her feet on the floor. Her son William administered oxygen and held his mother with her head resting on his shoulder. The nurse called the central mall at Jones Beach to find out if there was a doctor on the beach. She was informed that there were none, and she asked claimant’s son if he would rather have her call the Meadowbrook Hospital directly, or call the family doctor. About 6:30 p.m., the family doctor, Dr. Jack Gr. Lustgarten was called. The doctor spoke to both the nurse and the son, and the nurse informed him that Mrs. Rockwell was expectorating a bloody froth and that oxygen was being administered to her. The doctor advised the nurse to call an ambulance and get Mrs. Rockwell to Parmingdale Sanatorium as quickly as possible. At this point, there was a conversation between the mother and the son which indicated that the mother did not want to go to Parmingdale Sanatorium. The son took the phone from the nurse and talked with the doctor; and after he finished the conversation, he told his mother that she would have to go to Meadowbrook Hospital. By this time, the State Police arrived and the nurse told them to call an ambulance. It is about 15 to 16 miles from the first-aid station to Meadow-brook Hospital. The ambulance arrived at about 7:50 p.m. Claimant’s intestate was placed in the ambulance at approximately 7:55 p.m., and was admitted to Meadowbrook Hospital at 8:16 p.m. She expired at 8:25 p.m.
The claimant makes no claim for the accidental drowning of his wife. Counsel stipulated that there is no claim for liability on the part of the State attached to the sandbar situation— that there is such a phenomenon — it may or may not have happened. The only question to be resolved is whether or not the State was negligent in failing to provide prompt medical or hospital care, or a proper conveyance to a place where such care might be obtained. This being so, the State’s subsequent position is most closely analogous to that of the volunteer, who in no way responsible for the original accident, assumes the care of an injured person. It is now well settled that such a volunteer is charged with a duty of common or ordinary *170 humanity to provide proper care and attention, so that at least the injured party is made no worse.- Unreasonable delay in securing medical attention for an injured person, of whom one has taken charge, can constitute a violation of this duty, (Clark v. State of New York, 195 Misc. 581, affd. 276 App Div. 10, affd. 802 N. Y. 795; Middleton v, Whitridge, 213 N. Y. 499; Zelenko v. Gimbel Bros., 158 Misc. 904, affd. 247 App. Div. 867.)
The record herein and the facts hereinabove stated indicate that the family of the decedent, all adults, were continuously present and took part in trying to alleviate the decedent’s condition. The lifeguard on the beach, the nurse at the first-aid station, and the State Police fully co-operated with the family and the decedent. It can be said that the State promptly furnished oxygen, blankets, stretchers and co-operated with the family in procuring medical aid and an ambulance, and exercised ordinary and reasonable care commensurate with the circumstances. It is concluded from the record, that the cause of death of this decedent was pulmonary edema, the symptoms of which definitely appeared within approximately 10 minutes after her admittance to the first-aid station, If pulmonary edema had not developed, she would not have died. Although the basic cause of death was drowning, the immediate cause was pulmonary edema. The record is entirely devoid of any proof that whatever delay there might have been was unnecessary, or was caused by the employees of the State. There was no testimony offered by the claimant that the lifeguard, nurse, State Police, or any other employees of the State at the time were not qualified, incompetent or inexperienced,
The decedent had a previous history of tuberculosis, and after treatment in a hospital was discharged as an arrested case. It was stipulated by counsel that the tuberculosis was apparently healed and was not a factor in the death of the patient, The State employees at the accident scene had no knowledge of her condition or prior sickness.
The claimant having failed to establish any negligence on the part of the State of New York, its officers and employees, the claim must be and hereby is dismissed on the merits.