No. 10,025.

MRS. CATHERINE CONOLLY VS. CRESCENT CITY RAILROAD COMPANY.

1. Although a common carrier of passengers owes obligations to its well passengers as well as to those who are sick, and is bound to protect the rights of both; and although when the condition of one passenger, from sickness or otherwise, is such as to be inconsistent with the safety, health or even comfort of his fellow-passengers, regard for the rights of the latter will authorize the carrier to terminate the carriage by excluding him; yet this right cannot be exercised arbitrarily or inhumanely or without due care and provision for the safety and well-being of the ejected passenger.

2. A passenger stricken with apoplexy while riding on a street car, although attended with severe vomiting, to the inconvenience and great discomfort of other passengers, cannot be

removed while in a speechless and helpless condition, and laid in the open street on a bleak, drizzling December day, and there abandoned with no effort to procure him attention, without a gross violation by the carrier of its duty as such, and liability for resulting damage,

3.  The mistake of the driver in supposing that the passenger was drunk, when the latter had ridden a considerable distance without misbehavior, and had been guilty of none except the vomiting occasioned by his illness, cannot excuse the company.

4.  The defense admits the absence of any attempt whatever of the company to perform its duty of seeing to the care of the ejected passenger and rests upon a denial of any such duty in the premises. Hence the kind and degree of the care to be exercised under peculiar conditions which attend the operation of street railways in New Orleans, are not involved.

APPEAL from the Civil District Court for the Parish of Orleans. *Voorhies, J.*

*James Wilkinson* and *Zacharie & Armstrong* for Plaintiff and Appellee:

1.  Common carriers, in the conveyance of passengers, are bound to exercise a very high degree of diligence, care, skill and foresight. Lehman vs. R. R. Co., 37 Ann. 707.

2.  Especially where the passenger is known to be in any manner affected with a disability by which the hazards of travel are increased. Wardle vs. C. C. Co., 35 Ann. 204 and authorities there cited; Hickman vs. Mo. R. R. Co., decided by Supreme Court Missouri, March 21, 1887; East Line R. R. Co. vs. Rushing, S. C. Texas. Dec. 9, 1887, 6 S. W. Reporter, 834; Cent. Law Journal, vol. 26, p. 296; Shenandoah R. R. Co. vs. Morse, S. C. Virginia. Nov. 10, '87, 3 S. E. Reporter 796; Cent. Law Journal, vol. 26, p. 113.

3.  Street railway companies are held to the exercise of the same care, diligence and foresight for the safety of passengers as steam railroad companies. Central Law Journal, vol. 26, p. 50, Cittizens' St. R. R. Co. vs. Twinane, S. C. Ind., Sept. 27, '87, 13 N. E. R., p. 55; R. R. Co. vs. Buck, 96 Ind. 346; R. R. Co. vs. Rambolt, 99 Ind. 551; Lemon vs. Chanslor, 68 Missouri 340; Dougherty vs. R. R. Co., 81 Missouri 330; Kelley vs. R. R. Co., 70 Missouri 609; Leslie vs. R. R. Co., 88 Missouri 55; Smith vs. Ry. Co., S. C. Minnesota, April 2, '84, Am. and Eng. R. R. Cases, vol. 16, p. 310; Kellow vs. Central Iowa Ry. Co., S. C. Iowa, June 5, 1885, cited in Am. and Eng. R. R. Cases, vol. 21, p. 490; Sales vs. Western Stage Co., 4th Iowa 547; Frink vs. Coe, 4 Green 556; Bonce vs. Dubuque R. R., 53 Iowa 278; McElroy vs. Nashua R. R., 4 Cushing, p. 400; Christie vs. Greggs, 2 Campbell, p. 79; Hutchinson on Carriers, §§ 498 to 504.

4.  Where the company has the right to eject a passenger who is drunk, or disorderly, or refuses to pay his fare, or is suffering from *delirium tremens,* the right of ejection must be exercised with a reasonable care and a due regard for the welfare of the person ejected. This duty does not end with the removal, but it is the duty of the carrier to make such temporary provision for the protection and comfort of the ejected passenger, as the offices of humanity shall dictate, until some suitable provision for him shall be made. Louisville C. and L. R. R. Co. vs. Sullivan, S. C. Kentucky, Feb. 28, '84, Am. and Eng. R. R. Cases, vol. 16, p. 390; Atchison, Top. and Santa Fe R. R. Co. vs. Weber Administrator, S. C. Kansas, May 8, 1885. Am. and Eng. R. R. Cases, vol. 21, p. 418; Hall vs. South Carolina Ry. Co., S. C. South Carolina, March 20, 1888. S. E. Reporter, p. 632; Lovett vs. Salem and Danvers R. R., 9 Allen 557; Higgins vs. Watervliet R. R. Co., 46 N. Y. 23; Nichols vs. Middlesex R. R. Co., 106 Mass. 463; Wilton vs. Middlesex R. R. Co., 107 Mass. 108; Sandford vs. 8th Av. R. R. Co., 23 N. Y. 343; Isaacs vs. 3rd Av. R. R. Co., 47 N. Y. 122; Penn. R. R. vs. Vandiver, 52 Penn. 365; Kline vs. Central Pacific, 37 Cal. 400; Meyer vs. Pacific R. R., 40 Missouri 151; Shearman & Redfield on Negligence. § 264, note A.

The Appellate Court will not reverse two verdicts of two separate juries in the same suit awarding damages unless exorbitant, excessive or manifestly erroneous. 37 Ann. 231; Hennen's Digest, vol. 1, p. 92, (verbo) Appeal IX (b)., and authorities there cited; 5 N. S. 433; 6th L. 138; 2 Ann. 46; 13 L. 273; 5 Ann 522, 704; 11th L. 514; 6 Ann. 745; 7 Ann. 89; 10 Ann. 1; 12 Ann. 714; 10 Ann. 285; 37 Ann. 94.

Since the oral argument in this cause we have found several cases establishing the principle that "the duty of care and abstaining from injuring another is due to the weak, the " sick, the infirm, equally with the healthy and strong; and when that duty is violated " the measure of damage is the injury inflicted, even though that injury might have been " aggravated, or might not have happened at all, but for the peculiar physical condition of " the person injured." Lapleine vs. Morgan L. and T. R. R., 40th Ann., decided July " term. 1888, and authorities there quoted. Owens vs. R. R. Co., S. C. Missouri 8 S. W. R. 350; R. R. Co. vs. Jones, S. C. Alabama, 3 South. R. 902; R. R. Co. vs. Falvey, S. C. Ind., 3 N. E. Rep. 389; Beauchamp vs. Mining Co.; S. C. Michigan. 15 N. W. 65. R. R. Co. vs. Jones; S. C. Alabama, 3 South. R. 002.

## *John M. Bonner* for Defendant and Appellant:

1. Where a person gets into a street car filled with passengers, and, after riding a short distance, becomes sick and vomits on the floor of the car and some of the passengers, it is the duty of the driver to remove him from the car. 11 Allen. 304; 118 Mass. 228; 33 Kansas, 543; 47 Ann. 238.

2. Where such person, on being remonstrated with as to his condition, undertakes to leave the car, but is unable to do so, and in the attempt falls headlong on the floor of the car in his own vomit, it is the duty of the driver to assist in removing him from the car, and no action will lie against the carrier therefor.

    *Volanti non fit injuria.*

3. The driver of a street car is required to exercise the *diligentia diligentis patris-familias*; the diligence which a good specialist in his particular line of business would exercise. But this is the utmost extent of his liability. "The utmost degree of diligence exacted is that which a good business man is, under the particular circumstances, accustomed to show." Whar. on Neg. § 48; Sher. and Red. on Neg. 4th Ed. § 3.

4. Where a street car is managed by the driver alone and where he is required by city ordinances to make schedule time in running his car, he is not required to stop or leave his car to care for a sick passenger whom he honestly believes to be only drunk. 42 Miss. 607; 47 Am. R. 238.

5. Plaintiff must prove damages in order to recover them. She must make her case certain; to make it probable is not enough. 16 Ann. 121; 35 Ann. 498; 35 Ann. 697; 34 Mich. 507; 44 Pa. St. 377; 34 Ann. 161.

    The damages must result from the injury, and the injury must be directly caused by defendant. Hutch. on Carrier, § 807.

    The damages must also be the natural and ordinary consequence of the act complained of. 53 Pa. St. 436; 105 U. S. 249; 34 Ann. 144; 55 N. Y. 118, 119; 32 Ohio, 350, 351; 7 C. P. 253; Whrr. on Neg. § 3; Shear. and Red. on Neg., 4th Ed., § 5.

    Where speculation or conjecture has to be resorted to, the rule of law excludes the allowance of damages. 71 Ill. 391.

6. It is the invariable practice of the Supreme Court of Louisiana to set aside verdicts that are manifestly contrary to the law and evidence.

The opinion of the Court was delivered by

FENNER, J. On a Sunday in December, at about two o'clock of the afternoon, Patrick Conolly, a sober, respectable citizen, of 55 years, en-

tered a car of the defendant's street railway, and paid his fare as a passenger. Nothing in the evidence indicates that he exhibited any sign of intoxication or was guilty of the slightest impropriety of behavior, on entering the car, or until he had ridden a considerable number of squares (from Terpsichore to Third street), and the testimony is conclusive that, in point of fact, he was perfectly sober. After passing Third street, he was suddenly stricken with apoplexy, accompanied, as the medical experts prove to be common, with severe vomiting. The car had numerous passengers to whom this vomiting undoubtedly occasioned serious discomfort and inconvenience. Some of them left the car on account of it, while others of those remaining suggested that he should leave the car and took steps to call the attention of the driver to the necessity of removing him. The sick man had sufficient consciousness and sense of propriety left to observe this, and he said, " I will get out myself," but on rising to do so, he fell prone upon the floor, where he lay absolutely helpless. As far as appears, he never spoke again, and was incapable of taking any care of himself. The driver then came back and, with the assistance of a passenger, bodily lifted him, carried him out of the car, and laid him down in the street between the car track and the gutter, between two and three feet from the former. The evidence is conclusive that, almost immediately afterward, and while the car was moving of, he shifted his position, by some convulsive movement, so that his legs were across the rail of the track. This is proven by passengers who saw him in this position as the car moved away, and by others who came to him immediately afterwards. The driver, however, after thus summarily disposing of his stricken passenger, paid no further attention whatever to the matter. He took no steps to secure for him any relief or assistance. It is doubtful if he made any report of the incident to his employers, and if he did it was not acted upon. He simply went his way in a serene confidence that, as he expresses it, he had " done his duty," and although he passed the point several times while his ejected passenger was still lying helpless on the adjoining sidewalk, he states that he does not recollect whether he saw him or not. A female passenger, observing his perilous position across the track, went to his assistance and, with the aid of a gentleman, removed and laid him on the sidewalk. Here he remained for more than four hours, on a bleak, drizzling December day, in the open street, without aid or relief, in his terrible condition. At last the police authorities came to his assistance and he was conveyed to the Charity Hospital where he died on the following morning.

It should need no parade of learned authorities to maintain the propo-

sition that a common carrier cannot treat an unfortunate passenger stricken with apoplexy while under its charge, in the manner above indicated, without a breach of the plainest obligations of its contract of carriage. If there were any precedent to the contrary, humanity would revolt at it, and it would be one "more honored in the breach than in the observance." But there is no such precedent; and those cited by defendant's counsel are far from sustaining the position.

No doubt a carrier owes obligations to its well passengers as well as to sick passengers, and is bound to protect the rights of both. When the condition of a sick passenger is such that his continued carriage is inconsistent with the safety or even the reasonable comfort of his fellow-passengers, regard for the rights of the latter will authorize the carrier to exclude him from the conveyance. Thus if he had cholera, or smallpox, or *delirium tremens*, or even if, as in this case, he were subject, from any cause, to continuous vomiting, utterly inconsistent with the comfort of other passengers in a street car, the right of the carrier, in protection of the latter's privileges, to exclude him, would undoubtedly arise. Such is the reasonable doctrine of the cases cited. Lemont vs. R. R., 47 Ann. Rep. 233; Vinton vs. R. R., 11 Allen (Mass.) 304; Murphy vs. R. R., 118 Mass. 228; R. R. vs. Weber, 33 Kansas 543; R. R. vs. Statham, 42 Miss. 607.

But none of these cases hold that this right of exclusion can be exercised arbitrarily and inhumanely, or without due care and provision for the safety and well-being of the ejected passenger. On the contrary, the duty of exercising such care and provision is universally recognized. Thus, in the Kansas case, above quoted, the Court said: "Under these facts, the propriety of his removal cannot be doubted. * * The duty of the railroad company, with respect to Weber, did not end with his removal from the train. He was unconscious and unable to take care of himself. They could not leave him on the platform, helpless, exposed and without care and attention. It was its duty to have exercised reasonable care and diligence to make temporary provision for his protection and comfort." This was a case of intoxication.

And in the case most relied on, Lemont vs. R. R., the Supreme Court of the District of Columbia, after recognizing the right of removal, is careful to add: "Of course, for an abuse of this discretion, or for any oppression in its exercise, the company would be responsible."

In another case the Court, while recognizing the right of ejection, said: "It does not follow that the right may be exercised in such manner, under such circumstances, or against a person in such physical or mental condition as that death or serious bodily harm will necessarily

or even probably result from putting him off." R. R. Co. vs. Sullivan (Ky.) 16 Am. and Eng. R. R. cases, 390, See also Hall vs. R. R. Co. (So. Ca.) S. E. Rep., March, 1888; Lovett vs. R. R., 9 Allen (Mass.) 557; Higgins vs. R. R., 46 N. Y. 23.

We conclude, therefore, that the conduct of the defendant's agent, in turning out this helpless and speechless sick passenger into the roadway of the street, and there leaving him, on an inclement day, without the slightest attempt, at the moment or afterward, to have him taken care of, was a gross violation of its duty.

The company attempts to shield its agent on two special grounds, viz: 1. That he supposed, and appearances justify him in supposing that Conolly was drunk. Even if his illness had been the result of drinking, yet he had ridden a considerable distance without misbehavior, and was never guilty of any, except in the sudden access of vomiting bringing about a condition of complete helplessness. In such case, the duty of the company to see to his being taken care of, after ejection, would have arisen, and would have been abridged by no fault on his part, because, until his sickness, he had been in fit condition to take passage and had committed no voluntary misbehavior. Moreover, it is admitted that Conolly was not under the influence of liquor, and the assumption that he was so was a rash one, under the circumstances, and the company, not Conolly, must suffer for the mistake.

2. It is claimed that Conolly had signified his desire, and had attempted, to get out, and that the driver only helped him to accomplish his purpose. That he wished to get out while he thought he was able to do so and to take care of himself, may be true; but to suppose that he desired to be put out and left in the street after he had fallen down in an utterly helpless condition, is too preposterous to merit consideration.

We are not here concerned with the measure of the duty which a street company, operated under the conditions prevailing in the City of New Orleans, owes to a passenger in such unhappy case, nor with the kind of degree or care which it is bound to take for his protection. If we were, we should give due consideration to such conditions and would be careful to adjust the duty according to praticability. But the defense here rests upon the entire absence of any effort whatever to perform the duty and a denial that any duty arose in the premises. Such a defense can receive no sanction at our hands.

Nothing remains for determination but the measure of damages.

The cause of action arose prior to the recent amendment of Article 2315, Rev. C. C., and the damages recoverable are those only which were suffered by Conolly.

Conolly vs. Railroad Co.

The case was tried twice before a jury. The first verdict was for $1500, on which a new trial was granted. The second verdict, from which the present appeal is taken, was for $2500.

The evidence indicates that Conolly was not entirely deprived of consciousness, but his faculties were, no doubt, greatly obtunded. His sufferings were severe; and though he must have suffered in any event, it would be a reproach to the medical art to suppose that it could not have means to alleviate them, had he received proper attention.

The medical testimony indicates that the attack was necessarily fatal. The humiliation of this position was extreme, and it is probable that he felt that to some extent, because one witness states that, when asked if he was drunk, he shook his head.

On the whole, considering all the circumstances, we consider that an award of $1500 will do justice.

It is, therefore, ordered and decreed that the judgment appealed from be amended by reducing the amount to $1500, and that, as thus amended, the judgment appealed from be affirmed, plaintiff to pay costs of appeal.

---

## On Application for Rehearing.

FENNER, J. The propositions decided by us, in this case, which are fully, though briefly condensed in the syllabus, seemed to us so simple, so conservative, so limited, that we confess our amazement at the prodigious corrollaries and consequences which are attached to them in the brief for rehearing. While we are hopeful, and indeed confident, that no other person will ever make such deductions from the language used, we will, for the satisfaction ot counsel, expressly disclaim any purpose to convert the street railway of his client into an "eleemosynary institution," or to require it to add to its equipment a supply of doctors and trained nurses or an ambulance corps. The plain obligation to abstain from inhumane treatment of a sick passenger, which the law imposes upon carriers, may be discharged without the aid of such expensive appliances. But, at the same time, we do most stoutly hold to our view that this obligation is not, as counsel suggests, a mere moral duty resting on carrier only in common with all other persons, but is a specific legal duty arising from his contract and enforceable by all legal sanctions.

We are bluntly charged with deciding a case "not before us." We are in the habit of looking for the case before us, in the record and not in the briefs of counsel; and this charge would have been less flippant had counsel referred to any page of the record contradicting a single fact stated by us, which he has not done, and could not do.

We are reproached with attributing to counsel an *admission* which he has not made, viz: That Conolly was not drunk. As the evidence was conclusive and uncontradicted that he was not drunk, and as neither in oral nor printed argument did counsel assert that he was drunk, we deemed ourselves justified in treating this as an implied admission. If we were mistaken, there is no difference between a fact clearly proved and one admitted, and the error seems inconsequential.

We are accused of using "hard words," and of violating the amenities which should exist between court and counsel. The scant observance of those amenities exhibited in this brief, which we notice with equal surprise and regret, is not justified by any conscious offense on our part. The supposition which we characterized as "too preposterous for serious consideration," was one attributed by us to the driver and not to counsel. Had we thought that the counsel had adopted this supposition as his own, we might have sought for words more polite in which to qualify it, but we should have been compelled to substitute others not less emphatic.

It is claimed that the driver's mistake, in supposing Conolly was drunk, justified his course and screens the company from liability. If drivers are authorized to assume that every person who becomes ill and vomits in a car must necessarily be drunk, the soberest citizen is liable every day to incur the calamity which befell Conolly and to be treated in the same way. If they are not authorized to make such assumption from those facts alone, then there was absolutely no foundation for it in this case; because Conolly had ridden a long distance without any misbehavior or improper conduct, until he was suddenly stricken by apoplexy and attendant vomiting. No other fact supported the assumption, and every prior circumstance opposed it. We say, therefore, that if the driver honestly believed that Conolly was drunk, the honesty of that belief cannot excuse its manifest rashness and improvidence, or exonerate the company from liability for his fault.

The fact that some of his fellow-passengers, who had no responsibility or duty in the premises, jumped to the same uncharitable conclusion, cannot excuse the driver, who was charged with serious duties and was bound to have strong and reasonable grounds before acting in so summary and cruel a manner.

The only question in this case, on which there was even the slightest doubt or hesitancy in the mind of any member of the court, was as to the measure of damages. That was the subject of full discussion, which, considering that though years had elapsed, the judgment allowed no interest, resulted in an agreement on the sum named.

While sensible that, in such cases, ideal justice cannot be done, we adhere to the judgment.

Rehearing refused.