Hughes v. Gregory Bus Lines, Inc.

(Division B. May 5, 1930.)

[128 So. 96. No. 28680.]

Smith & Millsaps, of Cleveland, and **W. B. Alexander,** of Boyle, for appellant.

Maynard, FitzGerald & Venable, of Clarksdale, and Winchester, Knapp & Bearman, of Memphis, Tennessee, for appellee.

**Griffith, J.,** delivered the opinion of the court.

On September 17, 1928, appellee was operating a bus line as a common carrier of passengers, and on that date appellant took passage on one of appellee's carriages at O'Reilly in Coahoma county en route to Memphis, having purchased a ticket to that destination. While thus a passenger and at a point near the town of Coahoma, a stone thrown from the road by a passing automobile struck the bus window, next to which appellant was riding, shattering the glass, and a sliver of glass struck appellant in the left eye, cutting the eyelid and penetrating the eyeball. The blood flowed freely, and the passengers, noting the serious injury, informed the driver of the bus, who at once on arrival at Coahoma took the injured passenger to a physician. The physician was not an eye specialist, but upon full examination discovered that the eyeball was dangerously hurt, and having given such temporary treatment, as he could, the physician informed the driver that it was highly important that the injured passenger be placed under expert treatment as soon as he could arrive in Memphis, and that by so doing the eye could probably be saved; and the driver promised to see that this would be done.

Upon arrival at Memphis, it appears that the driver explained the situation to those in charge of the Memphis depot or station of appellee, and apparently the promise made both to the driver and to appellant that prompt steps would be taken, but nothing was done. And although appellant repeated the request several times during the night, no aid was secured, and apparently no effort of any kind was made to assist appellant other than to make a pallet of two bus cushions on which appellant could lie in said station. The testimony shows, or strongly tends to show, that appellant was in such pain and distress and so blinded by his injury as not to be able to do anything intelligently for himself. No help having

come during the night, appellant next morning was assisted into a bus en route to St. Louis, where appellant reached the home of a son the following night. During the day a sliver of glass came out of the eye, and although expert treatment was given after appellant reached St. Louis, appellant has wholly lost his eye and the other eye has been affected thereby.

A peremptory instruction was granted in behalf of appellee, which is defended, first, on the ground that no complaint can be made of any neglect of appellant on arrival at Memphis, for then the passage was completed and the responsibility of the carrier was at an end. We do not at all agree with this contention. When a passenger becomes sick or is injured while en route, no matter how free the carrier may be of any blame in respect to the sickness or injury, the carrier owes to the passenger the consideration and care of common humanity, and if the carrier neglects that care which the enlightened sentiments of common humanity would dictate, and by reason of that neglect after the injury has occurred the passenger suffers damage, the carrier is liable. It is the duty of the carrier to see to it that the passenger is placed where he can receive proper treatment, and with reasonable promptness, and not leave him in a helpless condition lying on the floor suffering the tortures of an injury such as is shown in this case. The above language is closely paraphrased from that found in Railroad Co. v. Byrd, 89 Miss. at page 321, 42 So. 286, and no further authority is necessary, but the following cases are also to the same effect: Eidson v. Southern Ry. Co. (Miss.), 23 So. 369; Atchison, T. & S. F. Railroad Co. v. Weber, 33 Kan. 543, 6 P. 877, 52 Am. Rep. 543; Railroad Co. v. Salzman, 52 Ohio St. 558, 40 N. E. 891, 49 Am. St. Rep. 745; Connolly v. Railway Co., 41 La. Ann. 57, 5 So. 259, 6 So. 526, 3 L. R. A. 133, 17 Am. St. Rep. 389; Middleton v. Whitridge, 213 N. Y. 499, 108 N. E. 192, Ann. Cas. 1916C, 856. And no authority is necessary to refute the proposition that although the duty of the carrier is as above stated while en route, yet no such duty

remains beyond the moment the destination mentioned in the ticket is reached. When the carrier knows of the helpless or practically helpless condition of the passenger at the end of the journey, and that the necessity of medical aid is urgent, it would none the less fail in its obligations when it simply leaves him lying there, than if it had done the like en route. This is the principle exactly upon which, in its ultimate analysis, the opinion rests in Dyche v. Railroad Co., 79 Miss. 361, 30 So. 711.

Appellee argues, in the second place, that there is no proof that the eye would have been saved had the appellant received attention at Memphis. It is enough to say as to this and as against a peremptory instruction that he could, at least and in part, have been saved the suffering which he endured while waiting all night, hourly expecting aid which he did not receive. Moreover, Dr. Rhyne, the physician who treated the eye by way of first aid at Coahoma, testified that in his opinion if the eye had received treatment at Memphis within a few hours after appellant arrived there, it would probably have been saved. The doctor's answer to that question was: "There was a vast probability of that, yes sir." The very argument made here by appellee on this issue was made in the Dyche case, supra, and was rejected.

We do not hold here that it was the duty of the carrier to bring an expert to wait on appellant, nor do we say that it was the duty of appellee to carry appellant to an eye specialist. We say only that, upon this record, appellee is liable when it did nothing. We know that Memphis is a large and prosperous city. We know as a matter of common knowledge that all such cities have ample facilities, charitable and otherwise, for the immediate relief of just such a case as this, and of all cases of suffering and injury; and we must assume, in the absence of proof to the contrary, that a proper and intelligent request to one of the hospitals or to one intelligently selected would have promptly brought an ambulance to take this appellant for treatment. What must be done to comply with the stated duty is an issue of fact in view

of all the circumstances to be submitted under proper instructions to the jury. We repeat that what we have here is that the carrier did nothing; wherefore what it should have done is not before us. Nor do we place any duty, that we have herein mentioned, upon the basis of any promise made by any agent of appellee; every promise made was no more than the duty would have been had there been no promise. This feature is mentioned only in connection with the fact that it is fully confirmatory of the presence of the essential element of notice to, and knowledge by, the carrier.

After mature consideration of the other ground of negligence charged in the declaration, we have concluded that the date of the injury was too close in point of time, with the first adoptions of the new invention, to make it proper to submit that question to the jury.

Reversed and remanded.