179 So. 75

**SEARCY v. INTERURBAN TRANSP. CO., Inc., et al.**

No. 34547.

Jan. 10, 1938.

Rehearing Denied Feb. 7, 1938.

Lee J. Novo, of Alexandria, for relator.

Hawthorn, Stafford & Pitts, of Alexandria, and Foster, Hall, Barret & Smith, of Shreveport, for respondents Interurban Transp. Company, Inc., and Tri-State Transit Co.

ODOM, Justice.

Plaintiff, a minister of the gospel, purchased a ticket and took passage on a passenger bus, operated by the Tri-State Transit Company, for Alexandria, La., about 22 miles way. While on the way he suffered a stroke of apoplexy, as a result of which he was paralyzed. When the bus was driven into the Union Bus Station at Alexandria, all of the passengers except the minister left it. The bus, it seems, had to be put in readiness for another trip immediately, and the bus driver who had brought it to Alexandria, observing that the minister was still in his seat in the bus and seeing that he was apparently asleep, attempted to arouse him. He was unable to do so, and thinking, as he said, that the man was drunk, called a helper, and the two lifted him bodily from the seat in the bus, carried him into the waiting room, put him in a chair, and left him. They say they left the station immediately, thinking they had done their duty by the passenger, and thought no more about him. This was about 11:45 a. m.

A short time thereafter, an outsider went into the waiting room and saw the minister lying prostrate on the floor. He told the ticket agent that a man who seemed to be drunk was lying in the waiting room. The ticket agent looked at him and, assuming that he was drunk, telephoned police headquarters that there was a drunken man at the station lying on the floor, and asked that someone be sent to take charge of him.

The desk sergeant at police headquarters notified the police, two of whom went to the bus station, found the man lying on the floor, and, assuming that he was in a drunken stupor, as the ticket agent had stated, picked him up, put him in a taxi, and carried him to police headquarters, where one of them made a charge of drunkenness against him. He was then carried to the city jail by the police officers and locked up. There is some testimony that they laid him on a cot, but, if they did, he soon rolled off, probably due to some convulsive movement, to the concrete floor, where his body lay limp for a little more than 24 hours. The police officers said they assumed that the man was in a drunken stupor and would soon revive. They paid no further attention to him, and he lay on the concrete floor, partially covered by some old matting, without the slightest attention or assistance from any one, until after 12 o'clock on the following day.

It was finally discovered that the man had not aroused, and the city physician, Dr. Wallace, was notified. Dr. Wallace discovered immediately that he had suffered a cerebral hemorrhage, which had almost completely paralyzed and rendered him speechless. Though the man could speak only a few words incoherently, the doctor finally learned from him that he was a minister of the gospel and that he had a brother living in Winnsboro, La., about 100 miles away. Either the doctor or someone connected with police headquarters telephoned the marshal at Winnsboro that the minister was in jail. The marshal notified the minister's brother, who immediately drove to Alexandria, took charge of him, and carried him to Winnsboro. His condition has improved considerably, but he is still paralyzed and totally incapacitated.

He brought suit against the Tri-State Transit Company and the Interurban Transportation Company for damages totaling $27,500, which he itemized as follows: (1) $15,000 for total disability, alleged to have been caused by the failure of the defendant companies to obtain for him medical aid immediately following the discovery by defendant's employees of his stricken condition; (2) $5,000 damages for his suffering due to neglect and to the treatment accorded him by defendant's employees; (3) $7,500 for slander to his good name and reputation.

The Tri-State Transit Company filed answer, in which it admitted that plaintiff was a passenger for hire on one of its passenger busses and that, while on his way from Colfax to Alexandria, he was stricken with apoplexy, and further admits that, after the bus reached Alexandria, he was taken therefrom, put in a chair in the waiting room, fell therefrom to the floor; that its agent and employee telephoned to police headquarters and had plaintiff removed from the station,

all as alleged by plaintiff. But it denies liability on the ground that its agents and employees believed, and had good reason to believe, that plaintiff's condition while on the bus and after being removed therefrom was due to drunkenness, and that its employees had performed reasonable services to him.

It is alleged in paragraph 8 of the answer that "after plaintiff boarded the said Tri-State passenger bus he apparently dozed off to sleep, and manifested every appearance of a man who was intoxicated, and was, in fact, thought to be intoxicated by the driver of the said Tri-State bus, and others who observed him"; and in paragraph 9 that the bus driver looked back at plaintiff and saw that he was "apparently asleep; that the bus driver and attendant on the bus, both employees of the Tri-State Transit Company, attempted to arouse the plaintiff but were unable to do so. * * * The bus driver and the attendant on the bus smelled liquor on plaintiff's breath, although plaintiff did not appear at that time to be intoxicated. * * * Both the bus driver and the attendant on the bus thought, from his appearance and because of his conduct, etc., that he had been drinking and was intoxicated."

In paragraph 10 of the answer it is alleged that the bus driver, the attendant on the bus, and the employees, "all concluded that he was intoxicated and that in view of the fact that he was in a helpless condition, and unable to look after himself, respondent's employees in charge of the bus station concluded that it was best to notify the police authorities of the City of Alexandria,

and that accordingly respondent's station agent called the desk sergeant at the Alexandria Police Station and notified him that there was a man in the bus station who apparently was intoxicated, and asked that the police department give the matter its attention."

It is further alleged that "there never was at any time anything which occurred in the bus station to indicate that plaintiff was in fact ill, and was not drunk, as all who saw him supposed him to be." It is further alleged in paragraph 13 of defendant's answer "that nothing occurred at any time, to respondent's knowledge, to indicate that plaintiff needed or required medical attention"; and defendant "disclaims any responsibility for any treatment which he may have received at the hands of the police authorities."

The case was tried by jury, which rejected plaintiff's demands. He appealed to the Court of Appeal, Second Circuit, and, on first hearing, the court ordered the entire case transferred to this court, on the ground that it had no jurisdiction. 171 So. 468. A rehearing was granted, and, on rehearing, the court held that it had jurisdiction except as to the item of damage resulting from slander. 179 So. 93. Plaintiff applied to this court for writs, which were granted, and the entire case is now before us for review.

The Court of Appeal held that plaintiff had failed to make out his case in so far as he claimed damages for permanent and total disability. We concur in the court's view on this branch of the case. Ac-

cording to the testimony of physicians, it is not at all likely that medical attention, if administered immediately after plaintiff suffered the stroke, would have averted the paralysis which followed. In their opinion, the paralysis which totally disabled the plaintiff would in any event have followed the stroke. Therefore, defendants are not liable on this count.

The Court of Appeal held further that there was no liability on the part of the Interurban Transportation Company, one of the defendants, for the reason that there was no contractual relationship between it and the plaintiff. There seems to be no connection between the Tri-State Transit Company and the Interurban Transportation Company, except that they use the same station in Alexandria. Plaintiff, it seems, intended to transfer at Alexandria from the Tri-State Company line to that of the Interurban. But he purchased a ticket only to Alexandria, and had none over the other line. The Interurban Company was therefore correctly absolved from liability.

The Court of Appeal rejected plaintiff's demands for damages on account of pain and suffering, on the ground that, from his petition, it was not sufficiently clear that he intended to ask damages on that ground.

We cannot concur in the court's holding on this point. Plaintiff alleged in several articles of his very lengthy petition that, from the moment of the stroke until he was finally removed from the city jail in Alexandria, he was conscious and that his pain and suffering during all that time were "intense and severe"; that such suffering could have been mitigated and rendered less severe had he been given medical aid and had he been administered to while in prison. And article 21 of his petition reads as follows:

"That as a result of the gross carelessness and gross negligence of the employees of the Tri-State and Interurban in failing to procure medical aid to alleviate the suffering of your petitioner, and to prevent any permanent effects of said stroke of apoplexy, your petitioner has been injured and damaged to the extent of Five Thousand and no/100 ($5,000.00) dollars."

It is true, as the Court of Appeal said, that plaintiff's allegations are not quite so specific as to this item of damages as they might have been. However, we find that plaintiff was permitted to testify without objection that he suffered intensely and that his suffering was augmented by the neglect and the treatment which he received at the hands of the employees of the bus company. Under the well-established rule that testimony received without objection enlarges the pleadings, our opinion is that plaintiff has a cause of action for this item of damage. Counsel for defendants seem to have understood that he was claiming damages for his suffering, because in their brief, page 4, they say:

"Second—He asks for damages in the sum of $5,000.00 for his suffering due to the alleged failure of the defendant companies to obtain medical aid."

The testimony shows beyond question that plaintiff on this occasion was not

drunk, but sick; that his condition was brought on by a cerebral hemorrhage which rendered his body limp and helpless; that he was entirely speechless for a portion of the time between the stroke and his removal from the city jail in Alexandria nearly 26 hours later; that, during a portion of this time, he was able to utter only a few words incoherently.

We quote the finding of the Court of Appeal on the question of his condition and as to the esteem in which he was held in the community, as follows:

"After a careful study of the many pages of testimony bearing upon the charge of drunkenness made against him, we reach the conclusion that it has no foundation in fact to rest upon. We are equally as certain he was not drinking. His true physical condition was hastily misjudged, resulting in a highly embarrassing and humiliating experience for him.

"Plaintiff preached to the membership of the Walnut Baptist Church twice on Sunday, September 23, 1936. He is well known in that community and the esteem in which he was held as a man and a minister is best attested by the church's action on that day in calling him to serve them regularly as pastor."

Such being the facts, the defendant Tri-State Transit Company is unquestionably liable. The law in cases of this kind was stated by this court in the case of Conolly v. Railroad Company, 41 La.Ann. 57, 5 So. 259, 261, 6 So. 526, 3 L.R.A. 133, 17 Am.St.Rep. 389, which was a case prac-

tically on all fours with this one. There, a passenger on a street car was stricken and fell to the floor in a helpless condition. The motorman in charge of the street car and the passengers thought he was drunk. He was taken from the car and laid on the street, where he remained for something like four hours before being carried to a sanitarium. He died the following day. Here is what this court said as to the defendant's liability in that case:

"The company attempts to shield its agent on two special grounds, viz: 1. That he supposed, and appearances justified him in supposing, that Conolly was drunk. Even if his illness had been the result of drinking, yet he had ridden a considerable distance without misbehavior, and was never guilty of any, except in the sudden access of vomiting, bringing about a condition of complete helplessness. In such case, the duty of the company to see to his being taken care of after ejection would have arisen, and would have been abridged by no fault on his part, because, until his sickness, he had been in fit condition to take passage, and had committed no voluntary misbehavior. Moreover, it is admitted that Conolly was not under the influence of liquor, and the assumption that he was so was a rash one, under the circumstances, and the company, not Conolly, must suffer for the mistake."

The facts and circumstances surrounding that case are practically identical with those in the case at bar. There, defendant's employees thought plaintiff was drunk, but instead he was sick. There, there was no foundation for the assump-

tion that the passenger was drunk, for, up to the moment he was stricken, he had been guilty of no misconduct. The conclusion of defendant's employees that the passenger was drunk was without foundation.

In the case at bar, defendant admits in its answer that plaintiff was guilty of no misconduct prior to the moment he was stricken. There was nothing whatever to indicate drunkenness, according to the bus driver, except, as he says, he thought he smelled liquor on the passenger's breath when he took up his ticket. The assumption of the bus driver and other employees of the defendant company that plaintiff's limp and helpless condition was due to drunkenness is extremely far-fetched. But assuming that they did so believe and that they acted in good faith, their mistake is the misfortune of the defendant, and it is liable for the damages sustained by the plaintiff. See 4 R.C.L., § 594, pp. 1161, 1162; Atchison Railroad Co. v. Weber, 33 Kan. 543, 6 P. 877, 52 Am.Rep. 543; Middleton v. Third Avenue Railway Company, 192 App.Div. 172, 182 N.Y.S. 598; Hughes v. Gregory Bus Lines, 157 Miss. 374, 128 So. 96; Conolly v. Railroad Company, supra.

Counsel for defendants say in their brief that they do not now contend that plaintiff was drunk. They do not argue that a common carrier's duty to a passenger for hire, who is stricken while en route to the knowledge of the employees, ends when the passenger reaches the end of his journey. But they defend on the ground that the employees of the defendant company

acted in good faith and that it would be a hardship on the company to compel it to respond in damages under the circumstances.

They say that the ruling in the Conolly Case, from which we have quoted, is correct. But they attempt to distinguish that case from the one at bar, in this: That the passenger in the Conolly Case was taken from the street car, laid out on the street, and allowed to remain four hours in a cold rain.

■ That, it is true, was an aggravated case. But the principle on which liability rests in the case at bar is precisely the same as in the Conolly Case, which is that, after observing that a passenger is helpless and unable to take care of himself, from' whatever cause, it is the duty of carrier's employees to exercise reasonable care and diligence and to make at least temporary provisions for his protection and comfort. Their failure to do so is clearly a violation of their contract for safe passage.

■ Instead of performing their duty, they assumed—and, so far as we can see, without the slightest foundation—that plaintiff in this case was in a drunken stupor, and caused the report that he was drunk to be spread abroad. It is true that defendant's employees did not formally prefer the charge of drunkenness against him. Yet they did cause him to be taken up by the police and be thrown into prison as a "drunk." The ticket agent, after seeing the limp and helpless body of plaintiff lying on the waiting room floor,

telephoned police headquarters that there was a drunken man in the station and requested that some one be sent to remove him. The officers, acting apparently upon the information received, took him up, preferred a charge of drunkenness against him, and threw him into prison. Their actions are traceable directly back to defendant's employees, who said he was drunk, and these employees insisted up to the trial that he was drunk and still say that they had good reason to believe he was. Even if it be true that the police officers were guilty of gross negligence and inhuman treatment of plaintiff while in jail, the fact remains that it ,was defendant's employees who caused his arrest and subsequent incarceration.

Although plaintiff was paralyzed and utterly helpless from the moment he was stricken until the time he was taken from the prison 24 hours later by his brother, he was not unconscious. He realized what was going on but could not explain or call for help. Not the slightest attention was paid to him during the time he lay in jail on the concrete floor. To say nothing of the pain and suffering resulting from the stroke, the suffering he must have undergone from the discomfort of lying on the floor without ministration to his ordinary bodily needs, and the consciousness of his innocence and his utter inability to call for or get help can well be imagined. He says it was intense.

He suffered some from the stroke itself. For this, defendant is not at fault. But the fact is that, if he had been afforded proper medical and other treatment, his discomfort and suffering would not have been so severe. He could have been relieved to some extent, to say the least.

For this item of damage, we think plaintiff should be awarded $2,500.

As to the slander charge, there is no testimony that plaintiff's reputation as a minister was injured. His friends and parishoners did not believe the report that he was drunk. But he is entitled to nominal damages for the false and slanderous charges made against him. And, in this connection, we must take into consideration the fact that he is a minister of the gospel, who has, according to all the witnesses, a spotless character and reputation. We assess his damage under this item at $1,000.

For the reasons assigned, the verdict of the jury and the judgment of the district court based thereon, and the judgment of the Court of Appeal rejecting plaintiff's demands are reversed and set aside. And it is now ordered and decreed that plaintiff have judgment against the Tri-State Transit Company for the sum of $3,500, together with legal interest thereon from judicial demand, and all costs of this suit.