**SEARCY v. INTERURBAN TRANSP. CO.,**
Inc., et al.*
No. 5327.

Court of Appeal of Louisiana. Second
Circuit.
Jan. 5, 1937.

*Rehearing granted Feb. 5, 1937.

Lee J. Novo, of Alexandria, T. H. McGregor, of Shreveport, and S. R. Holstein, of Winnsboro, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, and Hawthorn, Stafford & Pitts, of Alexandria, for appellees.

DREW, Justice.

Plaintiff instituted this suit against defendants for damages in the sum of $28,500, and for a cause of action he alleged the following:

"6. That on or about the 23rd day of September, 1934, the Rev. A. Cliff Searcy, having made a call at the Walnut Grove Baptist Church in Grant Parish, near Colfax, Louisiana, in his official capacity as minister and pastor of the church, held services on Sunday, September 23, 1934, and on the following day, which was about the 24th day of September, 1934, boarded the Tri-State bus near McClore's store, near Colfax, Louisiana, as a passenger, on his journey to Monroe by way of Alexandria.

"7. That while traveling as a passenger, having paid his fare on the said Tri-State bus, some short distance out of Pineville, Louisiana, in the Parish of Rapides, State of Louisiana, he was stricken with a stroke of apoplexy; that said stroke rendered him practically helpless and speechless.

"8. That on the way into Alexandria he informed the bus driver, with whom he had ridden before, of his condition but that no attempt, on the part of the bus driver or any employee of the said Tri-State on the bus, was made to assist him; that, on the contrary, he was abused.

"9. That on arriving in Alexandria at the bus station, which was jointly used by the Tri-State and the Interurban, he was abused and treated as a drunkard; that he informed the employees of the said Tri-State and the Interurban, namely, the driver of the bus on which he had ridden and the employees at the bus station, that he was sick and wished to have medical aid and that he had money to pay for same.

"10. That they first took him out of the bus, sat him in a chair in the back of the bus station, from which he fell and lay for some time on the floor; that the employees of the said Tri-State and Interurban, namely, the driver of the said bus on which he had ridden as a passenger and the employees of the bus station, rang the police and had him arrested and placed in jail under the charge of drunkenness, which was preferred by the bus driver and the employees at the bus station of the Interurban and Tri-State respectively; that he was thrown in a cell in a jail in Alexandria in Lee Street, and allowed to lie with part of his body on an old mattress or pad and part of his body extending over on the pavement of said cell, which is floored with concrete, for approximately 26 hours in this condition, while all the time he was suffering from a severe stroke of apoplexy.

"11. That he was placed in jail at about one o'clock P. M., on the 24th day of September, 1934, and allowed to remain in the said cell, in the condition above described, until about two-thirty P. M., the 25th day of September, 1934, approximately 26 hours, and that he was suffering tremendously from a stroke of apoplexy during the entire time and was practically speechless.

"12. That at about two-thirty P. M., on the 25th day of September, 1934, the police, realizing that your petitioner, Rev. A. Cliff Searcy, was not drunk but was sick, called Dr. R. B. Wallace, a physician practicing in Alexandria, Louisiana, to attend to the Rev. A. Cliff Searcy, and that he pronounced the diagnosis as being a stroke of apoplexy and that the said Rev. A. Cliff Searcy was a very sick man; that later on the brother and friends of the said Rev. A. Cliff Searcy were called and removed him to his home in Winnsboro, Louisiana.

"13. That he was not deprived of his consciousness and his suffering was intense and severe, and it is certain that medical aid could have, no doubt, alleviated his suffering had he received proper medical attention, and there is reason to believe that he would not today be totally and perman-

ently disabled had he received medical aid at the time of the stroke or shortly thereafter.

"14. That said treatment or failure to obtain medical aid for the Rev. A. Cliff Searcy and the act of having him arrested for drunkenness were due to the gross carelessness and gross negligence of the employees of the said Tri-State and Interurban, namely, the bus driver of the bus on which the said Rev. A. Cliff Searcy was a passenger and the employees of the bus station, and by reason thereof your petitioner was immediately rendered totally and permanently disabled and continues in that condition at this time.

"15. That the said treatment accorded, as above described, to the said Rev. A. Cliff Searcy, a passenger having paid his fare on the bus named and who should have been received in the capacity of a passenger at the bus station, was a complete violation of the rights and duties due him by the said Tri-State and the Interurban, and that the said treatment was arbitrary, inhumane and without due care and provision for his safety and well-being, and that they further violated his right to have medical attention, as no effort was made to obtain same for him, which the companies, through their employees, were in duty bound to do, all of which was due to the gross carelessness and gross negligence of the said companies and the said bus driver, and the employees at the bus station, the employees of the said Tri-State and Interurban.

"16. That the said companies are bound to exercise a very high degree of diligence, care, skill, and foresight in the treatment of their passengers and especially where any passenger is affected with a disability by which the hazards of travel are increased.

"17. That the gross negligence and the gross carelessness of the employees of the said Tri-State and Interurban to exercise the proper degrees of care, namely, a high degree of diligence, care, skill and foresight for the safety of their passenger, the Rev. A. Cliff Searcy, and the failure to provide him with the proper medical attention so as to alleviate his sufferings and assist in effecting the restoration of his health, and the gross carelessness and gross negligence in having him arrested and placed in jail for being drunk, was contrary to the duty of exercising such care and provision for his safety and a violation of their duty in that respect; that this act was per-formed arbitrarily, inhumanely and without provision for the safety and well-being of an ejected passenger; that all of these acts above described on the part of the employees of the said Tri-State and Interurban, were a violation of every duty owed your petitioner, and that such acts are responsible for his present condition of total and permanent disability.

"18. That the said Rev. A. Cliff Searcy is a minister of the Gospel of the Baptist faith, being a duly accredited minister and preacher; that he has lived in the city of Winnsboro for approximately 15 years, where he has enjoyed the confidence and good-will of the people and has enjoyed a splendid reputation for honesty, truthfulness, integrity and a minister and preacher of high repute.

"19. That the said charge and statement that the defendant was drunk, in the hearing of a large number of persons, was entirely false, scandalous, malicious and defamatory to your petitioner's good name, credit, reputation, all of which has been done by the gross carelessness and gross negligence of the employees of the said Tri-State and Interurban.

"20. That your petitioner, with his impaired speech, stated at the time that he was sick, and that the final placing of your petitioner in the jail and allowing him to remain there approximately 26 hours, together with the charge that he was drunk, made in the hearing of others and to the police, was false, scandalous, malicious, and defamatory to his good name, credit and reputation, and that he has been injured and damaged to the full sum of $7500.00

"21. That as a result of the gross carelessness and gross negligence of the employees of the Tri-State and Interurban in failing to procure medical aid to alleviate the suffering of your petitioner, and to prevent any permanent effects of the said stroke of apoplexy, your petitioner has been injured and damaged to the extent of $5000.00.

"22. That your petitioner immediately became totally and permanently disabled as a result of the gross negligence and gross carelessness of the employees of the Tri-State and Interurban, in failing to obtain medical aid for him at the time of his stroke of apoplexy or as soon thereafter as could have been possible, and that the said failure is the proximate cause of his present total and permanent disability.

"23. That as a result of said permanent and total disability brought on by the gross carelessness and gross negligence of the employees of the Tri-State and Interurban, as above stated, your petitioner has been damaged to the extent of $15,000.00."

The above allegations of the petition make it clear that the suit is for damages for breach of contract and slander, and is not a tort action. The amount of damages claimed is far in excess of $2,000, the limit of our jurisdiction in such cases. Although the question of jurisdiction is not raised by either side, we are forced to take cognizance of it because if we should render judgment in a case in which we are without jurisdiction, it would be subject to attack as a nullity, and would be a nullity. The proper jurisdiction lies in the Supreme Court.

It is therefore ordered that the appeal in this case be transferred to the Supreme Court of Louisiana, and the appellants are granted sixty days from the date of this judgment's finality in which to perfect the appeal to that court.