**SEARCY v. INTERURBAN TRANSP. CO., Inc., et al.**

**No. 5327.**

Court of Appeal of Louisiana. Second Circuit.

June 30, 1937.

Rehearing Denied July 19, 1937.

Writ of Certiorari and Review Granted Nov. 2, 1937.

For former opinion, see 171 So. 468.

For opinion of the Supreme Court reversing in part the decision herein, see 179 So. 75.

Lee J. Novo, of Alexandria, S. R. Holstein, of Winnsboro, and T. H. McGregor, of Alexandria, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, and Hawthorn, Stafford & Pitts, of Alexandria, for appellees.

DREW, Judge.

Plaintiff alleges upon two distinct causes of action. He sues for $20,000 damages for the tortious breach of a contract of carriage and for $7500 for slander and defamation.

Our first consideration of the case led us to the conclusion that this court was without jurisdiction ratione materiae of either cause of action. 171 So. 468. Reconsideration of the jurisdictional question has convinced us that, so far as concerns the demand for damages for breach of the contract of carriage, appeal was properly made to this court; but as to the other cause of action, we remain of the opinion that we have no jurisdiction, as more than $2,000 is sued for.

Before approaching this issue or the merits of the case for discussion, it is necessary that we summarize the allegations of the petition. These declare that the Interurban Transportation Company, Inc., and the Tri-State Transit Company of Louisiana, Inc., are licensed to and are doing business as common carriers and operate busses between the cities of Shreveport and Alexandria, La.; that on or about September 23, 1934, petitioner boarded a bus of the Tri-State Company, south of Colfax, La., 22 miles north of the city of Alexandria, and paid his fare to the latter city, but before reaching his destination, suffered an apoplectic stroke which rendered him practically helpless and speechless; that he informed the bus driver of his condition, but that no effort was made by him or any other employee of the carrier to give him relief or assistance, but, on the contrary, he was abused; that on arriving at the bus station in Alexandria which, he alleges, is used jointly by both companies, he was abused and treated as a drunkard; that he then and there informed the agents and employees of both companies that he was sick and desired medical aid, for which he was financially able to pay; that he was first taken from the bus and seated in a chair in the rear of the station from which he afterward fell to the floor and lay prone thereon for a considerable time; that the driver of said bus and the employees of the station rang the police of the city and had him arrested and placed in jail on a charge of drunkenness, which, he alleges, was preferred by said employees; that he was then thrown into a jail cell by said police and allowed to lie for about 26 hours, his body resting partly on an old mattress and partly on the concrete floor, during which period he suffered intensely; that at about 2:30 p. m. the following day, a physician was summoned and after examining him, his true condition was learned and announced. He further alleges:

"13. That he was not deprived of his consciousness and his suffering was intense and severe, and it is certain that medical aid could have, no doubt, alleviated his suffering had he received proper medical attention, and there is reason to believe that he would not today be totally and permanently disabled had he received medical aid at the time of the stroke or shortly thereafter.

"14. That said treatment or failure to obtain medical aid for the Rev. A. Cliff Searcy, and the act of having him arrested for drunkenness, were due to the gross carelessness and gross negligence of the employees of the said Tri-State and Interurban, namely, the bus driver of the bus on which the said Rev. A. Cliff Searcy was a passenger and the employees of the bus station, and by reason thereof your petitioner was immediately rendered totally and permanently disabled and continues in that condition at this time.

"21. That as a result of the gross carelessness and gross negligence of the employees of the Tri-State and Interurban in failing to procure medical aid to alleviate the 'suffering of your petitioner, and to prevent any permanent effects of the said stroke of apoplexy, your petitioner has been injured and damaged to the extent of Five Thousand and no/100 ($5000.-00) dollars.

"22. That your petitioner immediately became totally and permanently disabled as a result of the gross negligence and gross carelessness of the employees of the Tri-State and Interurban, in failing to obtain medical aid for him at the time of his stroke of apoplexy or as soon thereafter as could have been possible, and that the said failure is the proximate cause of his present total and permanent disability.

"23. That as a result of said permanent and total disability brought on by the gross carelessness and gross negligence of the employees of the Tri-State and Interurban, as above stated, your petitioner has been damaged to the exent of Fifteen Thousand and no/100 ($15,000.00) dollars."

He additionally alleges that said acts of omission and commission were, in their effect, a flagrant violation of his rights as a paid passenger and amount to a positive breach of duty due him by said companies, as such passenger, and of the contract of carriage superinduced by their relations. He avers that he is an ordained minister of the Gospel and has resided in Winnsboro, La., for fifteen years; that he there enjoys the confidence and good will of the people and also a splendid reputation for honesty, truthfulness, and integrity; that the charge publicly preferred against him that he was drunk is and was entirely false, and was maliciously made; that said charge defames and slanders his good name, credit, character, and reputation.

The Constitution ordains that in civil suits involving more than $2,000 the Supreme Court shall have appellate jurisdiction, "except in suits for damages for physical injuries to, or for the death of a person, or for other damages sustained by such person or his heirs or legal representatives, arising out of the same circumstances." Const.1921, art. 7, § 10. Cases falling within this exception are properly appealed to the Courts of Appeal. Art. 7, § 29. We do not think the words "other damages * * * arising out of the same circum-

stances," can by any fair and reasonable interpretation be construed to embrace an action for damages growing out of public defamation, although such defamation be in a manner an incident to or closely connected with, in point of time, a cause of action based upon the right to damages for physical injuries. It is our thought that the words, "other damages," refer primarily, but not exclusively, perhaps, to property damages, such as to motor vehicles when damaged or destroyed by the same negligence that caused injury to or death of the operator or others in the vehicle at the time. This question is definitely passed on in Newsom v. Starns et al., 174 La. 955, 142 So. 138. That case involved two separate causes of action, viz. (1) for personal injury, and (2) for libel and slander alleged to have been caused by the publication of the facts and circumstances forming the basis of the personal injury action. The Supreme Court, after stating the case, held:

"Court of Appeal had jurisdiction of action for personal injuries by tarring and feathering, regardless of amount demanded.

"Court of Appeal had no jurisdiction of cause of action for $20,000 damages for publishing news of plaintiff's tarring and feathering and libelous matters affecting him (Const.1921, art. 7, §§ 10, 29)."

The court also said that that part of the suit sounding in damages for slander and defamation "should be disregarded by the Court of Appeal for want of jurisdiction."

Defendants filed separate answers. The Tri-State Company, after denying categorically practically all of the essential allegations of fact of the petition, excepting the ownership and operation of the bus on which plaintiff rode as a paid passenger, which they admit, did further answer, in substance, as follows: That its bus was flagged at a point a few miles south of Colfax the morning of September 24, 1934, and plaintiff and another man boarded it and, after purchasing tickets to Alexandria, 22 miles south, took seats, the plaintiff taking one near the front end of the bus; that when the tickets were taken up the driver distinctly smelled the odor of liquor on plaintiff's breath and believed from this symptom that he had been drinking; that a few minutes thereafter the said driver noticed that plaintiff leaned back in his seat and dozed off to sleep; that the bus arrived at the station in Alexandria at 11:35 a. m., and at that time plaintiff was still asleep and made no effort to leave the bus, as all

the other passengers had done, including the man who had boarded it with him; that said driver and the attendant on the bus tried to arouse plaintiff, but were unable to do so;· he being only able then to utter some incoherent words such as a drunken man would utter, and, believing that he was in a drunken stupor, they lifted him out of the bus and placed him in the station in a chair, thinking this the best thing to do and that he would soon sober up; that after placing him in the chair, the driver and attendant left the station and did not see plaintiff any more. It specifically denies that any of its employees abused or ill-treated plaintiff, but on the contrary, avers that he was treated with all due respect and kindness; and that if he suffered a stroke of paralysis while riding its bus, such did not happen because of any fault or lack of care on its part.

The answer of the Interurban Company in the main is of the same purport and tenor as that of the Tri-State Company. It is additionally alleged by this defendant that the bus driver, the attendant thereof, and respondent's employees, who were in charge of the bus station, upon observing plaintiff's condition, all concluded that he was intoxicated and, in view of the fact that he was in a helpless condition and unable to look after himself, respondent's employees in charge of the bus station, concluded it was best to notify the police of the city, and accordingly this was done; the police sergeant being informed that there was a man in the bus station who apparently was intoxicated, and was asked that the matter be given attention. It is denied that this respondent preferred any charge against plaintiff or was responsible for him being put in jail. It is further alleged that a police officer, in response to said information, came to the bus station, took charge of plaintiff and placed him in jail; that respondent saw plaintiff no more thereafter and is not responsible for any ill treatment he may have subsequently received, and denies that he was mistreated at all.

The case was tried with the intervention of a jury. Plaintiff's demands were unanimously rejected by it. He has appealed.

Plaintiff is an itinerant minister of the Gospel of the Baptist faith. He enjoys a splendid reputation among those who know him best. He practices those virtues which the best thought of humanity regard most highly and commend as worthy to follow. After a careful study of the many pages of testimony bearing upon the charge of drunkenness made against him, we reach the conclusion that it has no foundation in fact to rest upon. We are equally as certain he was not drinking. His true physical condition was hastily misjudged, resulting in a highly embarrassing and humiliating experience for him.

Plaintiff preached to the membership of the Walnut Baptist Church, near Colfax, twice on Sunday, September 23, 1934. He is well known in that community, and the esteem in which he was held as a man and minister is best attested by the church's action on that day in calling him to serve them regularly as pastor. He slept there the night of September 23d in the home of a friend. He rose early next morning and, after eating breakfast, called at the home of Ike Thompson, a member of the church, which is half a mile from where plaintiff boarded the bus. After tarrying in Thompson's home for an hour or two, he and a young man by the name of B. J. Thompson, a nephew of Ike, started for Lacour's store to take the bus, which was not long due. There they drank a bottle of Coca-Cola and then hailed and boarded the bus, the hour being around 11 o'clock. Plaintiff, after buying a ticket, took a seat in the front end of the bus by the side of a young lady with whom he engaged in a brief conversation. Within ten minutes, the bus driver observed that he apparently had fallen asleep, with his head leaning against the back of the seat. He continued in that position and condition until the station in Alexandria was reached, about 11:35 o'clock. All the passengers got out of the bus and dispersed, save plaintiff. It was necessary to remove the bus to allow others to enter and pass, but before this was done the driver and attendant went aboard and endeavored to arouse plaintiff. He was limp and speechless. They instantly concluded that he was drunk and lifted him with due care from the bus and deposited his helpless body in a chair nearby, without notifying any one there or elsewhere of his presence or condition. They soon left the station and saw him no more. About 12:45 o'clock, a stranger passing through the station (it has entrances on two parallel streets), observed plaintiff lying prone upon the concrete floor in front of the chair he had occupied. He notified the ticket agent of his discovery and the agent immediately called police headquarters and informed the desk sergeant that a drunken

man was in the station and requested that he be given attention. A policeman soon arrived upon the scene and at once decided that plaintiff was drunk. He was loaded into a taxi and whirled away to the city jail, locked within a cell among other prisoners, after being laid upon a hard pad or mattress on the floor. There he remained unconscious and helpless for some 24 hours. A charge of drunkenness was made against him by the policeman. Some time during the following morning, the city physician was requested to examine plaintiff and diagnose his condition. He was found to be suffering from paralysis caused by cerebral hemorrhage. The marshal of Winnsboro was called and advised of the good brother's predicament. He got in touch with plaintiff's brother, who with a friend drove immediately to Alexandria, one hundred miles away, to relieve plaintiff's distress. They found him still in the cell, but able, with some difficulty, to make himself understood. He was released on his own recognizance. The charge against him was not pressed.

■ Defendants are separate and distinct corporations. The station in Alexandria is operated by the Interurban Company. The Tri-State Company is given the right to its use in loading and unloading its own passengers. Plaintiff intended to go from Alexandria to Monroe on a bus of the Interurban Company, but had purchased no ticket for the trip. His presence in the station, so far as the record discloses, was unknown to any agent or employee of the Interurban Company, except, possibly, some of the negro porters. There was no contractual relation whatsoever between it and plaintiff. This being true, the present action in damages for breach of duty as carrier against that company must fall. This leaves for consideration the liability vel non of the Tri-State Company.

■ Plaintiff did not sue for damages for the physical injury he sustained or may have sustained from being left in and to fall from the chair in the bus station, and from being allowed to remain on the jail floor to suffer pain and discomfort for so many hours; nor did he sue for damages resulting from the humiliation and embarrassment to him necessarily following knowledge that his confinement in jail was known to several persons. If he had predicated his suit upon appropriate allegations covering these facts, his chances of recovery would be much better than now. Briefly stated, as appears from the quoted articles of his petition, the theory of his alleged right to recover is based upon:

(1) That defendant breached its duty as carrier by leaving him in the station, in a helpless condition, and without summoning medical aid, or notifying some one who would do so.

(2) That had this duty been promptly discharged, one of the following results would have been attained: (a) Permanent physical relief from the effects of the stroke; or (b) a material improvement of his condition over what it is at present.

We are of the opinion that defendant's duty to plaintiff did not terminate by depositing him in the chair in the station. He was not drunk but sick, and the facts and circumstances, well known to the driver, did not warrant him in conclusively presuming him to be drunk. The following authorities sustain these conclusions: 4 R.C.L., pgs. 1161, 1162, § 594; Connolly v. Railway Co., 41 La.Ann. 57, 5 So. 259, 6 So. 526, 3 L.R.A. 133, 17 Am. St.Rep. 389; Atchison Railroad Co. v. Weber, 33 Kan. 543, 6 P. 877, 52 Am.Rep. 543; Middleton v. Third Ave. Ry. Co., 192 App.Div. 172, 182 N.Y.S. 598; Hughes v. Gregory Bus Lines, 157 Miss. 374, 128 So. 96.

But we do not think that plaintiff has to any dependable degree proven that he would have entirely recovered from the stroke, or that his present disabled condition would be less than it is, had medical aid and assistance been given him promptly after arriving in Alexandria.

The decided preponderance of the testimony is to the effect that there is no medical specific known for the relief of an apoplectic stroke caused by cerebral hemorrhage; that rest and sedatives are generally prescribed; that no relief is perceived until the accumulation of blood on the brain has been reduced or entirely taken up by absorption. Plaintiff's present physical condition is what ordinarily would be expected in a case of this character, being paralyzed along the left side of the body. Some cases recover entirely or materially improve without any medical attention, while in others the patient dies or does not improve, although promptly administered to by skillful physicians. From the very nature of such cases, the

outcome whether promptly treated or not, is not susceptible of proof.

For the reasons herein assigned, the judgment appealed from is affirmed, with costs.

The right to apply for rehearing is reserved to all parties.