McGREGOR v. NOVO.

No. 5880.

Court of Appeal of Louisiana.
Second Circuit.
March 8, 1939.

Rehearing Denied March 31, 1939.

Writ of Certiorari Denied May 1, 1939.

Lee J. Novo, of Alexandria, for appellant.

T. H. McGregor, of Alexandria, and S. R. Holstein, of Winnsboro, for appellee.

HAMITER, Judge.

A dispute between two members of the bar of this state relative to the payment of a fee is responsible for this litigation.

The following are the allegations of plaintiff's original petition:

"The petition of T. H. McGregor, domiciled in Richland Parish, this State, but temporarily employed and residing in the Parish of Rapides, respectfully represents:—

"That Lee J. Novo, a lawyer domiciled and residing in Alexandria, Parish of Rapides, State of Louisiana, and U. T. Downs, Sheriff of the Parish of Rapides, State of Louisiana, also a resident of this Parish and State, are indebted unto your petitioner in solido in the sum of Four Hundred Ninety-two and 67/100 ($492.67) Dollars, with legal interest from judicial demand for this, to-wit:

"That sometime during the latter part of October or the first part of November 1936, the said Lee J. Novo employed your petitioner to assist him in representing the plaintiff in suit No. 25,236 on the docket of the 9th District Court of Rapides Parish, Louisiana, said suit being styled: Rev. A. Cliff Searcy v. Interurban Transportation Company, Inc., et al.

"That at the time of this employment the said Lee J. Novo stated to your petitioner that he had a contract with the plaintiff in said case whereby he, the said Novo, was to receive 40% of the total amount that might ultimately be recovered in the said suit for the said plaintiff exclusive of court costs.

"That it was mutually agreed by and between the said Lee J. Novo and your petitioner that in the event a judgment should ultimately be obtained and rendered in favor of the plaintiff in the said suit the said Lee J. Novo would compensate your petitioner for his services by paying him out of the fee to be received by the said Novo a sum equal to one-eighth (⅛) of whatever might be collected for the said plaintiff exclusive of costs of court.

"That pursuant to said employment and mutual agreement and understanding, beginning with the date of employment, your petitioner was actively engaged in assisting the said Lee J. Novo in furthering the interests of the said plaintiff in the said suit and performed all and every service that was requested or required of him under the terms of the said agreement.

"That eventually a final judgment was rendered in favor of the plaintiff by the Supreme Court of Louisiana for the sum of $3500.00 with legal interest from judicial demand and all of the costs of the suit.

"That on or about February 15, 1938, the said Lee J. Novo caused a writ of fi fa to be issued in the said case in order to collect the amount of the said judgment and costs.

"That immediately thereafter there was paid to the said U. T. Downs, Sheriff of this Parish, by one or both of the defendants, a sum sufficient to satisfy the said judgment and writ, which payment amounted to the sum of $3,941.38 as representing the principal of the said judgment with interest from judicial demand exclusive of the amount that was paid for court costs.

"That under the terms of the agreement between the said Lee J. Novo and your petitioner, he, your petitioner, was entitled to receive in compensation for his services in the said case one-eighth (⅛) of $3,941.38, or $492.67.

"That while the said sum of $3,941.38 was in the hands and possession of the said U. T. Downs, Sheriff, your petitioner notified him in writing that he, your petitioner, herein, was entitled to receive as his portion of the said money one-eighth (⅛) of the principal sum of the said judgment and the interest on the same.

"That in this written notice your petitioner also requested the said U. T. Downs, Sheriff, to hold in his hands for petitioner the said ⅛ of the principal of the said judgment and the interest thereon.

482

"That the said Lee J. Novo refused and failed to recognize petitioner's right to the ⅛ of the principal of the said judgment and the interest thereon and as a consequence thereof the said U. T. Downs, Sheriff, at the demand of the said Lee J. Novo, paid to him, the said Novo, the entire principal of the said judgment and the interest thereon which amounted to the sum of $3,941.38 notwithstanding the said written notice and request that was delivered to the said U. T. Downs, Sheriff, in person by your petitioner.

"That notwithstanding the fact that the said sum of $492.67 is justly and legally due to your petitioner by the said Lee J. Novo, he continues to refuse and to fail to pay the same."

Plaintiff prays for judgment against Lee J. Novo and U. T. Downs, Sheriff, in solido for the said sum of $492.67, with legal interest and costs.

On the date of the suit's filing, which was March 10, 1938, both defendants tendered exceptions of no cause and no right of action.

Four days later, or March 14, 1938, plaintiff filed a supplemental petition in which he adopts and reaffirms the above mentioned allegations and prayer and further avers:

"That he is duly and regularly licensed and admitted to practice law in the State of Louisiana by the Supreme Court of this State and duly and regularly enrolled as an active member of the State Bar of Louisiana since its creation.

"That it was in his capacity as a lawyer duly and regularly licensed and admitted to practice law by the Supreme Court of the State of Louisiana and as a member of the State Bar of Louisiana that he was employed by the said Lee J. Novo, defendant herein, to assist him in representing the plaintiff in the suit referred to in paragraph 2 of the original petition herein."

On the last mentioned date a written motion was presented by defendants reading: "Your movers show that an exception of no right or cause of action, filed herein by your defendants, has been set for the 18th day of March, 1938, by the plaintiff herein; your movers show that there has been a supplemental petition filed by the said plaintiff and that a motion to dismiss said supplemental petition has been filed by the defendant; that the costs are accumulating and that your movers request that the Court require the said plaintiff herein to furnish a cost bond, or give security for the costs by the 18th day of March, 1938; your movers show that on the trial of the exception of no right or cause of action they intend to offer evidence and documents substantiating said exception of no right or cause of action, and that it is necessary that a bond be fixed for the payment of the costs of Court, including the stenographer's costs."

Attached to said motion is an order signed by Judge Leven L. Hooe of the Ninth Judicial District Court, reciting: "It is ordered by the Court that T. H. McGregor, plaintiff herein, furnish security for costs in favor of Lee J. Novo and U. T. Downs, Sheriff, defendants herein, in the sum of Three Hundred and Fifty Dollars, by the 18th day of March, 1938, in accordance with law, and in default thereof, that said proceedings be dismissed as in case of non-suit."

Notice of the motion and order was promptly given to defendants' opponent.

The above referred to motion to dismiss plaintiff's supplemental petition is grounded on the proposition that such petition injects new issues into the proceeding.

Plaintiff, on March 15, 1938, applied for the issuance of a rule commanding defendants to show cause why the order directing plaintiff to furnish security for costs should not be set aside, or, in the alternative, why the amount of security required to be furnished should not be reduced to a sum not to exceed $50. The rule issued, as requested, and was made returnable March 25, 1938.

The aforementioned motion to dismiss the supplemental petition and the exceptions of no cause and no right of action were considered by the court and overruled on March 18, 1938.

Defendants answered the petitions on March 19, 1938. Their averments will be hereinafter detailed.

When the rule to show cause was taken up for consideration on March 25, 1938, defendants offered a written motion to dismiss the entire proceedings as in case of nonsuit. Therein it was pointed out that the court ordered plaintiff to furnish security for costs by March 18, 1938, and that he failed to do so. The court rejected the motion and refused to sign the order attached thereto. Defendants then except-

ed to the rule as stating no right and no cause of action and answered it. The exceptions were overruled. Following a hearing, an order issued making the rule absolute and, as prayed for, setting aside and annulling the previous order to post security.

Defendants, in their joint answer, admit that the alleged money was paid to the sheriff in response to the issuance of a writ of fieri facias; that plaintiff gave written notice of his claim to said sheriff; and that the funds were turned over to defendant Novo, such being "merely a ministerial duty of the sheriff's office and done in the ordinary course of business of the said sheriff in the carrying out of the duties of his office." They deny, however, that they are indebted unto plaintiff in any amount whatever. The primary defense urged is set forth in numerous articles of the answer, the pertinent allegations of which are the following:

"* * * that the said Lee J. Novo was the leading counsel in the case of Searcy v. Interurban Transportation Co., Inc., et al; that the said Lee J. Novo prepared all the pleadings, prepared the case for trial, tried the case in the District Court, at which time S. R. Holstein, attorney of Winnsboro, Louisiana, appeared in the case as a friend of the family, so stating, and thereafter made no further appearances whatsoever, other than his name was carried along on some of the pleadings but took no active interest in the case.

"That the said Lee J. Novo appealed the case to the Court of Appeal.

"That pending the trial of the case in the Court of Appeal, the plaintiff, T. H. McGregor, sought to have himself associated in the case on the grounds and contention that he could win the case in the Court of Appeal, making his appeal for connection in the case to Lee J. Novo, leading counsel in the case.

"That, following consultation with the said Rev. A. Cliff Searcy the said Lee J. Novo, at the request of Dr. Searcy, allowed the said McGregor to associate himself in the case, furthering the interest of the said Rev. A. Cliff Searcy in the Court of Appeal, for which services it was agreed that the said T. H. McGregor would receive the sum of one-eighth of the amount of the judgment received or recovered in the Court of Appeal, and should he recover no judgment there would be no fee paid.

"That the said T. H. McGregor, in collaboration with the said Lee J. Novo represented the said Rev. A. Cliff Searcy in the Court of Appeal and the case was lost in the said court, recovering no judgment, which automatically cancelled the contract or agreement entered into by the said Dr. Searcy and the said T. H. McGregor, through Lee J. Novo, representing the said Rev. A. Cliff Searcy; that the said T. H. McGregor surrendered his file to the said Lee J. Novo and dismissed himself from further association in the case, which file is presently in the possession of the said Lee J. Novo, leading counsel for the said Rev. A. Cliff Searcy.

\* \* \* \* \* \*

"That all during the course of the employment of the said T. H. McGregor by the Rev. A. Cliff Searcy, while the case was in the Court of Appeal, the said T. H. McGregor looked to the said Rev. A. Cliff Searcy for the payment of his fees and did not look to the said Lee J. Novo for the payment of any fees, as such is impossible, considering the fact that the said Lee J. Novo at no time employed the said T. H. McGregor; the said T. H. McGregor was representing Dr. Searcy as will be shown in correspondence.

\* \* \* \* \* \*

"* * * the said defendant, Lee J. Novo, shows that he at no time personally employed the said T. H. McGregor as herein indicated, but all acts done by the said Lee J. Novo were in furtherance of the business of Rev. A. Cliff Searcy and as agent and attorney for the said Rev. A. Cliff Searcy, all of which was well known to the said petitioner at the time and the said Rev. A. Cliff Searcy."

On April 5, 1938, plaintiff made application for the issuance of a writ of subpoena duces tecum. One of the allegations therein was that, "since petitioner is unable to find his file in his office and since the said Lee J. Novo alleges and avers in his answer that he has it in his possession, your petitioner assumes this to be a fact." He asked for the production of such file and also the complete file kept by defendant Novo, both of which related to the Searcy case. The writ issued, and on the day of trial the files were produced in court.

The case was tried on its merits and submitted for decision. It was agreed that the court might hand down a written opinion in vacation and issue orders of appeal.

The court rendered a written opinion and its judgment during vacation, and therein condemned defendant Novo to pay unto plaintiff the claimed amount of $492.67, with legal interest and costs. Plaintiff's demands against U. T. Downs, Sheriff, were rejected.

Pursuant to the above mentioned agreement, orders of appeal, devolutive and suspensive, were entered on behalf of plaintiff and defendants. Defendant Novo was the only litigant that perfected an appeal, and, consequently, the judgment as between plaintiff and U. T. Downs, Sheriff, is not before us for review.

Our attention is first directed to the several motions and exceptions filed and urged by defendants.

■ The basis for the motion to dismiss the cause as in case of nonsuit was plaintiff's failure to comply with the court's order of March 14, 1938. As before shown, this directed the furnishing of security for costs in the sum of $350 by March 18, 1938. Before the expiration of the designated period, however, plaintiff obtained the issuance of a rule calling upon defendants to show cause why such order should not be vacated. The pendency of that proceeding had the effect of suspending the order. After a hearing on the rule, the order was set aside, and, in our opinion, properly so. The security was sought pursuant to the provisions of Act No. 111 of 1926. Under this statute a defendant may demand security only for such costs as he may have to pay in advance of judgment. Whitson v. American Ice Co., 164 La. 283, 113 So. 849; Hardee v. Beard et al., La. App., 152 So. 359; Buckley v. Thibodaux, 181 La. 416, 159 So. 603. It does not appear from defendants' motion or from any other portion of the record that the costs contemplated by said statute would be or were incurred in the instant matter.

■ The procedure followed by plaintiff in obtaining an annullment of the security order is criticized. The criticism is without merit. It was not a collateral attack, as contended, but a direct one. Furthermore, it was proper under the circumstances, for such order had been issued ex parte.

The motion to dismiss the entire proceeding was therefore correctly refused.

■ The motion to dismiss the supplemental petition is founded on the contentions, as we understand them, that (1) the new pleading tends to change the very nature of the original suit, and (2) it cannot be considered when offered after an exception of no cause of action has been filed. Obviously, the first contention is untenable. The amendatory allegations were merely for the purpose of stating the capacity in which plaintiff allegedly assisted defendant Novo, and of giving his status at the time of the institution of the suit. They did not alter the substance of the demand. In substantiation of the above stated second contention, citation is made of several cases, one of which is West Orleans Beach Corp. v. Martinez, 180 La. 31, 156 So. 165. We deem it unnecessary to comment at length on this, for the Supreme Court, in the recent case of Drewett et al. v. Carnahan et al., 186 La. 243, 172 So. 6, 7, held that a supplemental petition may be filed and allowed even after the sustaining of an exception of no cause of action. It said: "Our opinion is that the supplemental petition should have been considered, notwithstanding it was filed after the judge had sustained the exception of no cause of action. As a rule, a judge ought to allow a plaintiff an opportunity to supplement his petition, and thus to avoid a dismissal of his suit, when the judge sustains an exception of no cause of action merely because of a failure of the plaintiff to make an allegation of fact which, though not alleged, may nevertheless be true. It was never the law that a petition which does not state a cause of action is no petition at all and hence cannot be supplemented or amended."

The court in its opinion in the Drewett case referred to the fact that West Orleans Beach Corp., Inc., v. Martinez, mentioned supra, had been overruled in Reeves v. Globe Indemnity Co., 185 La. 42, 168 So. 488.

■ Under the exceptions of no cause and no right of action, defendant urges that plaintiff, "knew that the money was in the hands of the sheriff and his proper remedy at that time would have been to have enjoined in the hands of the sheriff the payment of the money. This he failed to do. The money was paid out as above stated and therefore the question is but a moot one." The exceptions cannot prevail. This is not a suit involving the distribution of a fund. Plaintiff seeks herein to effect recovery of a fee assertedly due him by defendant Novo under a contract of employment; and he has the right and is entitled to bring a direct action against his alleged obligor therefor without being re-

quired to attempt the enjoining of the sheriff from paying the funds held by the latter.

In commencing a discussion of the merits of the instant controversy, we think it well to state the course taken by the case of Rev. A. Cliff Searcy v. Interurban Transportation Co. Inc., et al., out of which plaintiff's claimed fee arose. A trial of that litigation in the district court resulted in the rejection of Rev. Searcy's demands. He perfected an appeal from the decision, returnable to this court. The case was argued and submitted on December 14, 1936, at our term in Alexandria, Louisiana. We rendered a decision therein on January 5, 1937, holding that this court had no jurisdiction of the case and ordering it transferred to the Supreme Court. Searcy v. Interurban Transp. Co., 171 So. 468. All litigants applied for a rehearing, and, after further consideration was given, such was granted on February 5, 1937. The matter was resubmitted on May 3, 1937. The judgment of the trial court, which dismissed the suit, was affirmed in our decision rendered June 30, 1937. 179 So. 93. However, we reserved to all parties the right to make application for a second rehearing. On July 13, 1937, a rehearing was applied for by appellant. This was refused on July 19, 1937. Appellant notified this court on July 23, 1937, of his intention to apply to the Supreme Court for a writ of certiorari. The latter tribunal granted the writ on November 2, 1937. On January 10, 1938, it rendered a decision reversing and annulling our judgment and that of the district court, and decreeing recovery in Rev. Searcy's favor. 189 La. 183, 179 So. 75.

According to the allegations of Mr. Novo's answer, quoted supra, he admits that Mr. McGregor was associated with him in the case while it was pending in the Court of Appeal, and that his associate would have been entitled to a fee of one-eighth of the amount recovered if success had attended Rev. Searcy's claim there. It is his contention, however, that the employment was on the part of Rev. Searcy and was restricted to the hearing in that court; and the fee, if such became due by reason of recovery, was payable only out of the funds belonging to Rev. Searcy. The record appears, therefore, to present for decision two questions of fact: (1) Was Mr. McGregor employed by Mr. Novo under an agreement that one-eighth of the amount recovered would be paid the former out of the fee contracted for by the latter with Rev. Searcy, and, if so, (2) was that agreement effective only so long as the litigation was in the Court of Appeal?

It will be our purpose to summarize the testimony of each witness in so far as it relates to the mentioned issues. The personal pronouns used in the respective summarizations refer to the witness whose testimony is, at the time, being detailed, unless a contrary intention is shown.

Mr. McGregor was the first witness to testify. He states that before the Searcy litigation was commenced, Mr. W. D. Searcy and another friend came to his office, which was then in Alexandria, Louisiana, and conferred with him regarding the securing of counsel for the prosecution of the claim for damages of Rev. A. Cliff Searcy. These persons were informed that he was then employed as Regional Title Attorney under the Solicitor of the United States Department of Agriculture, and it would be impossible, for him to take part in the trial and prosecution of the case. He suggested and recommended Mr. Lee J. Novo as a suitable and proper attorney for the employment. Thereupon the three went to Mr. Novo's office. After introducing his friends to Mr. Novo and stating to the latter the general nature of the case, he departed.

Before the suit was filed, Mr. Novo told him about entering into a contract of employment with Rev. Searcy, and the two on several occasions discussed the merits of the case and also the law applicable thereto. He took no part in the trial. Following the rendition of judgment in the district court and the perfecting of appeal the two discussed the case, including the probability of winning it, at various times.

About the middle of October, 1936, while the matter was pending on appeal, he received a notice from a government official that he was to be given a temporary furlough of three months. Shortly thereafter he met Mr. Novo on a street in Alexandria, mentioned the furlough and stated that he would open a law office in Shreveport, Louisiana. Without any suggestion from him, Mr. Novo requested that he enter the Searcy case and lend his assistance. The following day he went to Mr. Novo's office and discussed the question of his employment. Mr. Novo there stated that the case was being handled on a forty per cent contingency fee basis, thus leaving sixty per cent for Rev. Searcy; and that S. R. Hol-

stein, it was understood, had a side agreement with Rev. Searcy to be paid by the latter a fee of fifteen per cent. It was then agreed that he should receive twelve and one-half per cent of the amount recovered, payable out of the forty per cent that Mr. Novo had contracted for. The employment was not limited to the Court of Appeal. On the contrary, it was assumed all along that the case would ultimately go to the Supreme Court on a writ of certiorari.

There was also discussed at the last mentioned meeting the matter of writing a brief. Mr. Novo handed him a rough draft that had already been prepared, which he took to his office. He rewrote the brief in its entirety, in long hand, using therein the contentions and the citations of law found in the draft furnished to him, and submitted it to Mr. Novo. The latter had it copied, signed the names of Lee J. Novo, S. R. Holstein and T. H. McGregor to the final draft and filed it in the Court of Appeal.

Both he and Mr. Novo presented oral arguments in the case at the December, 1936, term of the Court of Appeal held at Alexandria. After such court rendered the decision declining jurisdiction of the case, he prepared and filed the application for rehearing and the supporting brief and sent copies thereof to his associates. The case was resubmitted, after the rehearing was granted, without additional oral arguments.

Immediately following the court's decision of June 30, 1937, which affirmed the trial court's judgment, he wrote Mr. Novo a letter. This was dated about July 1, 1937. "In that letter I stated that I had just begun to fight and that it would be necessary to carry the case to the Supreme Court on a writ of certiorari." He also stated therein that in view of the additional work required he should share in the contracted fee on a 50-50 basis. Mr. Novo replied to the communication and acquiesced in the suggestion. Neither the originals of those two letters nor the carbon copies thereof were in the files which belonged to him and Mr. Novo and were produced by the latter at the commencement of the trial in response to the writ of subpoena duces tecum. The carbon copy of his letter and the original of Mr. Novo's were in his file when it was last in his possession. He did not surrender his file to Mr. Novo. "I have absolutely not one scintilla of recollection of having left the folder in your office. Since it is in your office and you have it I say

that very likely I may have inadvertently left it there, but why I should have even had it in your office I cannot understand." He saw the file in his own office subsequent to the time the application for the writ of certiorari was made to the Supreme Court.

Several days after the above mentioned exchange of correspondence, he was notified to return to his government position in Alexandria. He went to that place on July 7, 1937, and called at Mr. Novo's office the following morning. At that time a detailed discussion was had regarding the basis on which the case would be presented to the Supreme Court, although a second rehearing had not then been sought in the Court of Appeal. Because he had no stenographer and Mr. Novo had recently succeeded in the Supreme Court on a writ of certiorari, he suggested and agreed that Mr. Novo prepare the necessary pleadings and insert therein, insofar as applicable, the discussed points and the reasoning and arguments employed in the Court of Appeal. On leaving the office, Mr. Novo called attention to his resumption of the government work and suggested that the fee should be divided as originally planned and arranged. This was agreed.

The application for the second rehearing in the Court of Appeal, that was later filed, was prepared by him but the names of the attorneys were affixed thereto by Mr. Novo.

After the rehearing was refused he was in Mr. Novo's office on numerous occasions during which discussions were had about the preparation and filing of the application for the writ. Mr. Novo informed him that the work was being done and the application would be personally presented to the Supreme Court when completed. Drafts of it and the supporting brief were not submitted to him, although he had presumed that Mr. Novo would do so. Ultimately he learned through the newspapers that the writ had been granted. Conversations subsequently had regarding the case, which were numerous, implied that both lawyers were still interested in the litigation.

Following the Supreme Court's decision he learned that counsel for the defense planned to ask for a rehearing. Thereupon he suggested to Mr. Novo that a similar application be made for Rev. Searcy. Mr. Novo emphatically replied, "No, I have decided not to ask for a rehearing. I will let it stand just like it is." This was the

first indication given by Mr. Novo regarding his intended individual handling of the case in the Supreme Court.

Thereafter, an attorney for the defendants went to Alexandria and tendered a check in settlement of the judgment. It was made payable to Mr. Novo, Rev. Searcy, Mr. McGregor and Mr. Holstein. Mr. Novo then demanded of him that he instruct the attorney to erase his name and also that of Mr. Holstein from the check, and asserted that he had no interest in it by reason of his resignation from the case. He refused to comply with the demand. Later Mr. Novo caused to be issued a writ of fieri facias and payment of the funds required by the judgment was made to Sheriff Downs.

Since that time he secured a copy of the brief filed in the Supreme Court, which was signed only by Mr. Novo, and compared it with the one used in the Court of Appeal. "A careful examination of those two briefs revealed the fact that there is not one point raised in the Supreme Court brief that was not raised in the Court of Appeal brief and that the two briefs are identical word for word and line for line to at least ninety or ninety-five per cent."

He did not disassociate himself from the case. "I wish it were possible for me to state with greater emphasis than the ordinary oath calls for. I absolutely never thought for one instant of dismissing myself in the case and I never told you any such thing! We always discussed the proposed application for a writ certiorari as though I was interested in it. We talked about how we were going to succeed and, as I said this morning, I was surprised when you told me that you had already filed or sent it on. I said it wasn't necessary to call me or something like that, that I was sure you knew just how to do it, and I was satisfied and never dreamed that you had left my name off."

With reference to his handling cases while in the government's employ: "All the cases that I had on hand at the time I resumed my work I have carried and am carrying. It is not only one case. When I first became employed I had cases on hand and I argued before the Supreme Court and the Court of Appeal and I am continuing to do it. I have the right to finish those cases. I take leave when I am off and I am entitled to."

The pertinent testimony of Mr. Novo will now be considered. No discussion was had with Mr. McGregor regarding the suit until subsequent to its filing, except that Mr. McGregor told him that the case was worth only about $75. After the case had been lost in the district court Rev. Searcy stated to him, "You are a good lawyer but you need help and I want you to associate with yourself somebody else in this case." Mr. Searcy was informed that he would do so. In that consultation, which was the only one had on the subject, Rev. Searcy further said that, "anything I would do would be agreeable with him." A letter to that effect was also sent to him. The mentioned consultation was the one referred to in paragraph 17 of the answer in the instant cause. Pursuant to the described authorization, Mr. McGregor was associated in the litigation. The employment contract was that Mr. McGregor would receive twelve and one-half per cent of the judgment, if the case was won in the Court of Appeal, and such amount was to be paid by Rev. Searcy and was in addition to the fee of forty per cent due to him. The positive agreement was that Mr. McGregor was to look to Rev. Searcy for payment. "Judge Holstein told me that he only appeared in the case as a friend and expected no fee."

Most of the documents filed in the case were prepared in his office by himself, with the assistance of his stenographer, and on his stationery.

Shortly after the decision of the Court of Appeal of June 30, 1937, Mr. McGregor resumed his government position in Alexandria. Previous to that date he had frequently traveled back and forth, or commuted, between Shreveport and Alexandria. Mr. McGregor came to his office to prepare the application for the second rehearing in the Court of Appeal. Following a refusal of this, which was July 19, 1937, Mr. McGregor made only one visit to his office and that was when the file was surrendered to him. On the last mentioned occasion Mr. McGregor told of being back in the employ of the government, of an entertained belief that the case could not be won in the Supreme Court, and of a desire to become disassociated from the litigation. He informed Mr. McGregor then that he was "going on with the case". The surrendering of the file was prior to August 6, 1937, the date on which the application for the writ was filed in the Supreme Court.

He does not remember receiving the letter claimed to have been dispatched to him by Mr. McGregor about July 1, 1937, in which the latter stated, "I have just begun to fight," and suggested a fifty-fifty division of Novo's contracted fee; and he made no reply to a letter of that character. Further, no conversation was had in his office with Mr. McGregor, when the latter resumed the government position, regarding an adherence to the original employment arrangement.

No discussion was ever had with Mr. McGregor relative to the possibility of obtaining a reversal in the Supreme Court or to the preparation of the application for the writ of certiorari.

The application for such writ was dictated and typed in his office. However, he received some help in the preparation of it, this being from another lawyer whom he had employed in the same manner that Mr. McGregor had been associated. This employment was pursuant to the authorization given in the aforementioned consultation and "under a blanket power of attorney to do what I thought best to win the case. I had that sort of authority." Rev. Searcy was to pay the necessary fee. Although the associate was a practicing attorney in the city of New Orleans, he preferred not to state the name. This lawyer thought the brief used in the Court of Appeal was all right, but the application for the second rehearing did not conform to the brief.

On the issuance of the writ by the Supreme Court, Mr. McGregor called at his office and complimented him on his excellent work in obtaining it.

On rebuttal Mr. McGregor testified that he was not at Alexandria from about the middle of January, 1937, until July 7, 1937, and that therefore he was not seen by Mr. Novo frequently during that period as the latter stated. He did not tell Mr. Novo that he considered Rev. Searcy's claim to be only a $75 case. Reference is made to a letter directed to Mr. Novo and dated November 24, 1936, which is filed in evidence, wherein he values the case from a compromise standpoint at from $2,500 to $4,000.

The complimentary remarks that he made, after the writ was granted, related to the efforts of both Novo and himself. "I thought that it was our case and he never intimated to me that he thought otherwise."

Regarding his employment by Novo: "The important thing is that twelve and one-half per cent is what was agreed on and with the understanding that it was to come out of his fee. I have never and am not now looking to Dr. Searcy for one dime in the world. He doesn't owe me one dime and never has."

The testimony of the Rev. A. Cliff Searcy is that he did not consult with Mr. Novo relative to the employment of Mr. McGregor, and that he made no agreement to pay the latter's fee. He was not aware of Mr. McGregor's connection with the case at the time it was argued in the Court of Appeal. Nothing was said to Mr. Novo about a desire to associate additional counsel.

The brother of Rev. Searcy, who is Mr. W. D. Searcy, testifies that he took part in the employing of Mr. Novo to handle the case. Mr. Novo did not consult with him regarding the engaging of Mr. McGregor's services. It was about December 5, 1936, when he learned that Mr. McGregor had been associated. He was in Mr. Novo's office on that date and the latter stated: "I have employed him to assist me. He knows the Court of Appeal over there and he is now living in Shreveport." With reference to the payment of Mr. McGregor's fee, Mr. Novo said, "I am paying it out of my fee." Rev. Searcy did not ask Mr. Novo to get additional counsel.

The trial court decided, with reference to the two questions of fact propounded by the record, that Mr. McGregor was employed by Mr. Novo under an agreement that the former would receive for his services one-eighth of the amount recovered in the suit, such to be paid out of the forty per cent fee for which Mr. Novo had contracted; and that the employment was not restricted to the litigation's pendency in the Court of Appeal, but was to and did endure until final determination of the cause. The evidence, when considered in its entirety, sustains such decision. The conclusions and reasons for judgment expressed by the mentioned jurist, in his well considered written opinion, are in accord with ours and we here quote and adopt them:

"It appears from the pleadings, and the evidence, that plaintiff as a matter of fact was employed by defendant to assist defendant in appealing the case, and that plaintiff was to receive 12½ per cent of

the amount recovered. Plaintiff contends that his fee was to be paid by defendant out of defendant's 40% coming to defendant, while defendant contends that it was to be paid by Rev. Searcy out of Searcy's remaining 60%, after deducting for Mr. Novo's fee of 40 per cent. Plaintiff's positive testimony, together with the testimony of both Rev. Searcy and his brother, W. D. Searcy, who looked after the employment of counsel for him, clearly preponderates in favor of plaintiff as against the negative testimony of the defendant on this point.

"And, the duration of plaintiff's employment certainly, the court thinks, was intended and understood to be from the time plaintiff became associated with defendant as associate counsel in the case throughout the remainder of the trial before whatever courts the case may be appealed to, and continuously until its final disposition, which would, of course, include the Supreme Court.

"The evidence, the court thinks, amply justifies this view. It is reasonable to suppose that if Mr. Novo engaged Mr. McGregor's services as associate counsel it would have been to assist in the case not only in the Court of Appeal, but before the Supreme Court in the event it should be carried to that court. This court feels that there is no doubt that plaintiff continued with his assistance in the case after its final decision in the Court of Appeal, and that he took an active part in the preparation for carrying the case to the Supreme Court, all as plaintiff has fully and in detail explained in his testimony; that he held himself ready and willing to render every assistance he could, and was requested by or suggested by defendant to do. There was much joint discussion and study of the case by and between plaintiff and defendant preparatory to getting it before the Supreme Court. The brief used in that court was practically identical, as to the discussion of facts and points of law raised, with the brief used before the Court of Appeal, the latter of which was almost entirely the product of the plaintiff. Defendant, it appears, never at any time stopped plaintiff, or refused any proffered services by plaintiff, until after the Supreme Court handed down its opinion, at which time plaintiff advised filing application for rehearing and then for the first time defendant announced that he was handling the case himself and that he was not going to take any such action. Certainly, if defendant considered that plaintiff was no longer associated in the case after its final decision in the Court of Appeal, the natural thing for him to have done would have been to decline any further assistance, or offer of help, from plaintiff in taking the case before the Supreme Court and then informed plaintiff his reasons for so doing. The fact that defendant failed to do this, and continued his collaboration with plaintiff, practically and to all intents and purposes as they had been doing before, we think, refutes defendant's contention that plaintiff voluntarily abandoned the case when it was lost in the Court of Appeal and surrendered his file to defendant. There is no independent facts or circumstances disclosed by the record to corroborate defendant in this, his contention on this point, other than the fact that plaintiff's file was found to be in defendant's possession. Defendant's testimony is that plaintiff came to his office and surrendered his file, stating that he was through with the case and did not propose to go any further with it. Plaintiff most emphatically denies that he did so; on the contrary, he testifies that he wrote Mr. Novo a letter in which he gave it as his opinion that the case could be won in the Supreme Court and made the statement that he had 'just begun to fight.'

"The court can see no good reason for plaintiff taking it upon himself to take his private file and surrendering it to Mr. Novo, even if he had concluded to go no further with the lawsuit. Plaintiff did not have a written contract with defendant providing for his employment to be surrendered. He had no important documents in his file which Mr. Novo might need in the furtherance of the case. Therefore, nothing plaintiff had in his file could, so far as the testimony shows, have been of any benefit to defendant; why should it be necessary to surrender a file which could be of no future assistance to defendant? The court, therefore, is led to the conclusion that plaintiff's version of this incident is reasonable and correct. And, if correct, then it was defendant's duty to produce the letters which plaintiff testified were in both files and which, as he states, bore directly on the question of whether or not plaintiff abandoned the case. Mr. Novo, it is true, testified that there never was any such correspondence. Plaintiff, however, testified positively that there was.

"Taking the testimony as a whole, the court is of the opinion that plaintiff has proven his demands by a sufficient preponderance of evidence to warrant judgment in his favor."

Accordingly, the judgment is affirmed.